JOSEPH E. TETER, Respondent, v. CENTRAL COAL & COKE COMPANY, Appellant.

Kansas City Court of Appeals, May 26, 1919.

1. **MASTER AND SERVANT: Mines: Safe Place to Work.** It is the well settled law of this State that it is the duty of the miner to keep his working place safe, and the duty of the master to keep the entries (the places generally used by many miners) in a condition of reasonable safety.

2. ———: Jury Question.  When the place of the injury is at the same time the miner's working place and one of the entries of the mine, it is a question of fact to be determined under the evidence as to whose duty it is to maintain such place in a reasonably safe condition.

3. ———: Instructions.  An instruction which submits the case to the jury on the theory that plaintiff was not injured at his working place where the evidence clearly shows he was, is erroneous.

4. ———: Conflicting Instructions.  Where one of the defendant's instructions conflicts with a proper instruction given for the plaintiff, the defendant may not complain.

Appeal from Macon Circuit Court.—*Hon. Vernon L. Drain*, Judge.

REVERSED AND REMANDED.

*R. S. Matthews & Son* for respondent.

*B. R. Dysart* and *W. C. Goodson* for appellant.

BLAND, J.—Plaintiff recovered a verdict and judgment in the sum of twelve hundred and fifty dollars for injuries alleged to have been sustained by him by reason of a rock falling from the roof of an entry in a coal mine in which he was working.

Defendant makes the point that its demurrer to the evidence should have been sustained.  The facts show that plaintiff was directed by the defendant to turn a room at a certain place off a main entry of the mine. He began this work with his assistant, who was called his "buddy," by cutting two perpendicular apertures, or cuts, in the side of the wall of the entry, extending into the wall for a depth of two feet.  These side cuts were seven feet apart.  The outer edges of the cuts would form the outer side, or boundaries of the room neck when made, and the cuts would afford a leeway for the coal to give when the shot, which was put in to break up and dislodge the coal in the room neck, was fired.  For the shot plaintiff drilled a hole seven or

eight feet into the coal between the cuts; put in this explosive charge and left the mine in the afternoon. The shot firer exploded the charge that evening when all had gone. The explosion broke up the coal within the limits of the proposed room neck and threw a large amount out of the wall between the two cuts and down on the floor of the entry, some falling in a pile at the foot of the wall and some out on the car tracks in the center of the entry. These car tracks were about three feet from the face of the coal. When plaintiff returned the next morning he and his buddy began shoveling the coal that had fallen on the track into a car. They had been told to clear the track "so the entry man could load and . . . were carrying out the order." They had loaded one car preparatory to loading another when plaintiff, standing on the track chunking the car, was injured by a mass of material falling upon him from the roof of the entry.

Plaintiff's testimony shows that when he went to work to turn the room on the afternoon before, there was a layer of top coal eight inches thick, which extended from the proposed room neck at the top of the wall next to the roof and as a part of it, out over the entry and to about a foot beyond the nearest rail of the track. Above this layer of top coal was a rock; all of this rock was in the roof of the main entry. It was this rock and layer of top coal that fell upon plaintiff. When asked what caused the top coal to fall, plaintiff's buddy said, "The rock pulled it."

Plaintiff testified that the evening before he was hurt he examined the roof "right over his head" where he was cutting, and that he sounded the sock in the entry outside of the coal in the entry; that he tried to take down this top coal but it was solid and he thought the coal would hold the rock above it and "that was the reason it was left there." He also said that a miner takes down the top coal in a man's working place. He further testified that before commencing work on the morning that he was

hurt, he looked at the roof and "where the coal was shot out I sounded it there and it sounded' solid." He said that he sounded nowhere else. In other words, and in the language of his buddy, they "sounded the roof next to the rib" where the shot was put in. Plaintiff also testified that the coal that had fallen down in a pile at the foot of the wall, or, as he put it, "along the side of the track," was in his working place, but that the place where the coal fell out farther, into the entry and on the track, was not in his working place. He admitted that he put the coal loaded by him into the car from this latter place. He said this coal which thus fell out into the entry was four or five or six feet from the face of the coal. It would appear that plaintiff was limiting his working place to the precise spot against the wall where he would stand to cut the room neck and was not allowing it to extend beyond him any distance whatever, even though the coal that he had shot out would fall out beyond this limit and he would have to work out there in order to shovel it up.

It was plaintiff's duty to remove the coal shot down by loading it into a car which stood upon the car tracks in the main entry. These car tracks were used for conveying coal to the shaft by one or more cars. It is apparent from the evidence that plaintiff examined the roof the evening before when he began work, and he though it was safe and that the top coal would keep the rock from falling. Upon returning the next morning the only examination made of the roof was at the point where the roof joined the side immediately above the place where he stood to cut the room neck. If he could not get the layer of coal down the afternoon before and he thought the roof was safe and the coal fell the next morning after the shot had been fired, the inference would be that the shot and jar of the explosion, or the falling away of the coal blown out by the shot, so weakened the layer of top coal that the mass finally fell.

There was evidence on the part of plaintiff that it was defendant's duty to keep the roof of the entry above which he was working at the time he was injured in a reasonably safe condition. There was also evidence on the part of defendant that it was plaintiff's duty to look out for the rock and coal that fell upon him. It is defendant's contention that plaintiff was injured at his working place and that it was not the duty of the master to keep that place reasonably safe but that that duty devolved upon plaintiff. In support of this contention defendant cites the case of State ex rel. v. Ellison, 270 Mo. 645. It is stated in that case, l. c. 651, "Under the well established mining law of the State, it is the duty of the miner to keep his working place safe, and the duty of the master to keep the entries (the places generally used by many miners) in condition of reasonable safety."

Although plaintiff attempted to limit his working place to the precise spot against the wall where he would stand to cut the room neck, we think there is no question but that his working place extended beyond that, and that the place where he was injured was his working place. However, he was also injured in the main entry, a place that it is held is the master's duty to keep in a reasonably safe condition. The entries of a mine are used by all clases of employees. These employees by the nature of things are constantly going back and forth through them, and it would appear that no individual employee other than one who was employed by the master to keep the entries in safe condition, should be required to keep said entries safe unless it would be some employee who was working in said entries and by the nature of his work was changing conditions in such a manner as to render the entries not reasonably safe. There was evidence in this case the defendant had what was called a day man whose duty it was to go through the entries and see that they were safe, and that defendant's servants had known for sometime before the accident that the rock was

loose.  Plaintiff's buddy testified, "It was the company's duty to take care of this rock, according to the custom of the mines."  "My father" (plaintiff) "and I had no right to take this rock down.  The day man is supposed to examine the roof."  Now it was for the jury to believe or disbelieve this testimony.  It may well have been defendant's desire that plaintiff not interfere with the use of the entry, where many employees in the nature of things would have to go back and forth, by plaintiff using his own methods of caring for the rock, when defendant was compelled to protect these other employees against this and other dangers in the entry, and employed a man for that very purpose.

The facts in this case present a situation that has not heretofore been before an appellate court of this State.  It is apparent that we cannot apply any fixed rule and say as a matter of law that plaintiff was required to keep the place at which he was injured in a reasonably safe condition, nor can we say that it was defendant's duty to do so.  Plaintiff was hurt not only in his working place but in the main entry and it was clearly a question of fact to be determined under proper evidence as to whose duty it was to look after the rork and coal that fell upon plaintiff.  As before stated, there was evidence, *pro* and *con,* that it was custom and practice in this mine for defendant to keep the place where plaintiff was injured in a reasonably safe condition, and defendant had ample time after it discovered that the rock was loose to have remedied the situation.

It is urged that plaintiff's instruction No. 1, which purports to cover the entire case and direct a verdict, was erroneous in "that it ignores the fact that plaintiff could not recover, if injured at his working place.  It authorizes a recovery if he was injured in the main entry."  As we have before stated, the question whether plaintiff was injured in his working place or in the main entry is not determinative  of this case.  In-

struction No. 1 properly submitted to the jury the question as to whose duty it was to keep the place in which plaintiff was injured in a reasonably safe condition. It is claimed that this instruction conflicts with defendant's instruction No. 1, the latter instruction told the jury that if plaintiff was working in his working place, either in the main entry or elsewhere, that he could not recover. While there is conflict in the two instructions, the same was invited by the defendant; its instruction was improper and it cannot now complain.

Plaintiff's instruction No. 4 was erroneous. This instruction told the jury that if they found that it was defendant's duty "to use reasonable care to keep the roof of the entry in a reasonably safe condition, and that plaintiff was hurt through no fault or negligence on his part (*at a place other than his working place in said mine*)," (Italics ours) it was their duty to find for the plaintiff. It is apparent from this and other instructions that the court tried the case on the wrong theory. This instruction submits the theory to the jury that plaintiff was not injured at his working place when, evidently, he was. It, was, therefore, misleading and the court committed error in giving it.

Complaint is made of the court's refusal to give instruction No. 8, which told the jury as a matter of law that plaintiff was required to use ordinary care in inspecting the roof above him "if he had to use a small portion or section of the main entry." From what we have said this instruction was properly refused, for the reason that plaintiff was not required to inspect the roof, the place where he was injured, unless it was his duty to keep the same in a reasonably safe condition. [Gambino v. Coal and Coke Co., 180 Mo. App. 643.]

Something is said by defendant as to plaintiff being guilty of contributory negligence. This was clearly a matter for the jury to determine under proper instructions. As the case must be re-tried we think that

plaintiff's instruction No. 3 should not be given, for the reason that there is no evidence to the effect that defendant delegated to plaintiff its duty to keep the roof of the entry in a reasonably safe condition.

The judgment is reversed and the cause remanded. *Trimble, J.,* concurs; *Ellison, P. J.,* concurs in the result.