AVERY SPICER, RESPONDENT, v. CARL HANNAH, ET AL., APPELLANT.—
247 S. W. 2d 864.

Kansas City Court of Appeals.   Opinion delivered March 3, 1952.

*C. M. Hulen,* for appellants.

1216

*Raymond L. Falzone,* and *Hunter, Chamier & Motley,* for respondent.

BOUR, C.—Plaintiff brought this action to recover damages for the alleged wrongful death of her husband. The deceased was an employee of defendants, engaged in his regular work in defendants' coal mine, located in Randolph County, when he was killed by rock which fell from the roof of the mine. The defendants are Carl Hannah, Roy Hannah, and C. N. Hannah, partners doing business as Hannah Coal Company.

Plaintiff alleged in her amended petition that defendants duly rejected the workmen's compensation law of this state before the date of the fatal accident. The grounds of negligence alleged in the petition need not be set out here. Defendants admitted in their amended

answer that they rejected the workmen's compensation law before the accident occurred; denied the negligence charged; and pleaded "that the place where the deceased was working at the time of the accident was his working place or room, and that it was the duty of the deceased to properly care for, prop or remove any and all rocks which were likely to fall in said place." Defendants further alleged, in paragraph 11 of the amended answer, that "if said rock fell, as in plaintiff's amended petition alleged, that the fall of said rock was occasioned by the negligence of the deceased in failing to properly care for his own working place, and failing to remove said rock or properly prop same, and that such negligence on the part of said deceased directly contributed to or was the sole cause of the injury as sustained by the deceased. That the fall of said rock was a risk which deceased assumed, and which was incident to his employment."

Plaintiff filed a motion to strike paragraph 11 of the amended answer, and the motion was sustained. The trial resulted in a verdict and judgment for plaintiff in the sum of $4000, and defendants have appealed.

It is contended that plaintiff's motion to strike "should not have been sustained in full." The workmen's compensation law, sec. 287.-080, R. S. 1949, provides that if any minor employer, who has been determined to be engaged in an occupation hazardous to employees, or any major employer has elected to reject the provisions of the compensation law, in any action to recover damages for personal injury or death of his employee in the course of his employment, it shall not be a defense that the same was caused by the negligence of a fellow servant, or that the employee had assumed the risk of the injury or death, or that the same was caused in any degree by the negligence of the employee.

Since the defendants admitted that they rejected the workmen's compensation law prior to the accident, it is obvious that the defenses of assumption of risk and contributory negligence were not available. This is conceded by defendants. They insist, however, that the court erred in striking their plea that the negligence of deceased was the sole cause of his death. This contention is without merit. A "sole cause" defense is not an affirmative defense but is one that can be made under a general denial or under an answer specifically denying the negligence charged in the petition. Long v. Mild, 347 Mo. 1002, 149 S. W. 2d 853; Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. 2d 548. In the instant case, defendants' amended answer specifically denied all of the charges of negligence in the amended petition. It is clear, therefore, that the "sole cause" plea in paragraph 11 of the answer was mere surplusage. Ramp v. Metropolitan Street Ry. Co., 133 Mo. App. 700, 704, 114 S. W. 59, 61. The motion to strike was properly sustained. In ruling this point we have assumed, without deciding, that defendants' rejection of the compen-

1218

sation law did not proclude them from defending on the ground that the negligence of the deceased was the sole cause of his injury and death.

Defendants' second contention is that the court erred in overruling their motion for a directed verdict at the close of all the evidence. For the purpose of determining whether plaintiff made a case for the jury, we must disregard defendants' evidence, unless it aids plaintiff's case, and consider only the evidence most favorable to plaintiff and the most favorable inferences arising therefrom. Becker v. Aschen, 344 Mo. 1107, 1112, 131 S. W. 2d 533, 536.

The evidence showed that plaintiff's husband, Ollie Clifton Spicer, was killed about 12:30 p. m., on September 26, 1947, while working as a loader in an entry in defendants' coal mine. The mine was operated by "driving" entries or passageways, from the sides of which "rooms" were opened or "turned." The entry in question ran east and west. At the time of the accident this entry was about 200 feet long, from 12 to 14 feet wide, and approximately 6 feet high. Four rooms had been turned off the entry. A permanent track ran east and west in the entry, upon which coal cars were drawn by mules. The track was about 36 inches wide and the south rail was 16 to 20 inches from the "rib" or right side of the entry. The east end of the track was about 8 or 10 feet from the solid face of the coal at the east end of the entry. One witness said 12 to 14 feet. Another witness testified that temporary "slide rails" had been placed beyond the east end of the permanent track. The vein of coal at the east end of the entry was about 5 feet high. (The term "face of the coal," as used hereinafter, means the solid face of the coal at the east end of the entry.)

For some time prior to his death, Spicer had been working at the east end of the entry. On the afternoon before the accident, Spicer drilled holes in the face of the coal and loaded them with powder. After he left the mine that day, the coal was "cut" by Huston Hughes and his helper, Cleo Scofield, a machine being used for this purpose. The cut was made below the coal and it was about 5½ feet in depth. Hughes and Scofield then fired the shots. The explosion broke up the coal and threw it down on the floor of the entry. The coal that was shot down was referred to by the witnesses as the "break," as distinguished from the solid face of the coal. The next day and while Spicer was loading this loose coal into a car standing on the track mentioned above, a portion of rock fell from the roof of the entry upon him, causing instant death. There were no eyewitnesses to the accident, but the evidence tended to show that Spicer was engaged in loading coal at the time of his death. As stated, the accident occurred about noon. Spicer's body was found a short time thereafter between the east end of the car and the face of the coal. His body was "a little to the north of the car" with the head resting on loose coal.

Two witnesses for plaintiff said the distance between the body and the face of the coal was about 10 feet; one said 12 feet. There was testimony that the distance between the car and the face of the coal was approximately 12 feet.

The roof of the entry was described by plaintiff's witnesses as "black top." They said the roof was dangerous, brittle, and "broke out in squares like slate." One witness testified that the roof had been "shot" before Spicer was killed. It appears from the evidence that when the rock fell it left a hole in the roof. Hughes and Scofield, testifying for plaintiff, stated that they saw the hole immediately after the accident; that it was about 10 feet from the face of the coal, "over the track" and "directly above" or "pretty near over" Spicer's body. Hughes also said the hole was about 6 or 8 feet from the "break of the coal." Henry Fainter, a witness for plaintiff, testified that the hole was from 12 to 14 feet from the face of the coal and that it extended over the east end of the car. He "heard the rock when it hit the car." The rock was described by the witnesses as "egg shaped"— "kinda round"— "oval shaped"—"smooth"; and it was referred to as a "niggerhead" rock. Plaintiff's witnesses testified that it was about 4 or 5 feet long and two or three feet wide. Two witnesses for defendant testified that they saw two rocks, one resting on deceased's head and the other on his legs.

At the time of the accident, Huston Hughes had been working in defendants' mine about four years. He testified that it was his duty to inspect entries in the mine the first thing every morning; that he did not inspect the same entry every morning —"maybe I'd go one way and someone else would go another"; that he made such inspections under orders given by defendants; that the entry in which Spicer was killed was inspected every morning by "some day man or some boss"; that he had inspected this entry many times before the accident; and that the inspection consisted of clearing the track and sounding the roof "up to the break." Dewey Spicer, a son of the deceased, testified that he worked in defendants' mine four years, but that he left the mine about three months before his father was killed; and that during the time he worked there, Carl Hannah (one of the defendants) or "some of the day men" would test the roof of the entries— "Generally every day * * * up to the break of the coal." A witness for defendant, who was working in the mine at the time of the accident, stated that he had seen Carl Hannah test the roofs of the entries.

Plaintiff's witness Hughes also testified as follows: About 7:15 a. m. on the day of the accident, he inspected the roof of the entry where Spicer was killed by "sounding" the roof with a pick; and in so doing he discovered the rock that fell on Spicer. When he struck the rock it "sounded drummy," which indicated that it was "loose." It was "too dangerous to work under." He called defendant Carl Hannah, who was nearby, and told him something should be done

about the rock. Hannah sounded the rock with a pick and said "the rock was all right—there wasn't any danger." Hannah then requested Spicer, who had been changing his clothes preparatory to starting work, to sound the rock. Spicer tested the rock and told Hannah it was loose. Thereupon, Hannah said: "You (Spicer) clean the break of coal and we'll do something about it." Hughes' testimony in regard to this incident was corroborated by Cleo Scofield who said he was present at the time. Scofield also testified that Hannah told him (Scofield) not to take the rock down. The evidence showed that defendants made no attempt to remove the rock or to prop or timber it.

Plaintiff's evidence tended to show that several employees used the entry at the place where deceased was killed. Cleo Scofield testified: "Q. Well, at the time Mr. Spicer was injured, during that day what employees besides Mr. Spicer would use that entry way or have occasion to be in there? A. First is the machine runner and his helper and then the mule driver he comes in and out, and the track layer, he comes in and lays track. Mr. Spicer loads coal out of it, and Mr. Hannah comes around to see if things is all right." Dewey Spicer testified: "Q. While an entry is being extended and before they have made the room, who would use it? A. Probably just be the loader and the timber man, the track layers and the machine crew and the driver. * * * Q. What about anyone inspecting the roof? A. Well, they generally come around and inspect it. Q. So that they would use the place also? A. Yes."

Plaintiff's evidence tended to show that under the custom and practice in defendants' mine, it was the duty of deceased to secure the roof over his working place by means of "upright props," but that it was the duty of defendants to secure or remove loose rock in the roof above deceased's working place if such rock could not be properly supported by "upright props." That because of the size, shape, and location of the rock in question, it could not have been supported by "upright props," and that the fall of the rock could have been prevented only by "cross timbering," or by removing it. In short, plaintiff's evidence tended to show that under the custom and practice in the mine, it was the duty of defendants to secure or remove the rock that killed deceased, and not the latter's duty to do so.

Defendants' evidence tended to show that under the custom and practice in the mine, it was the duty of deceased to keep the roof over his working place safe; that the rock in question could have been supported by an "upright prop"; that it was not defendants' custom and practice to inspect the roof over a man's working place, and that they had not directed anyone to do so. Carl Hannah denied that he was in the entry in question with Hughes and Scofield on the morning of September 26, 1947; and denied that he told deceased to continue working under the rock, and that the rock would be removed or timbered after the coal had been cleaned up.

As stated, it is contended that the court erred in overruling the motion for a directed verdict at the close of all the evidence. In support of this contention defendants argue, first, that deceased was killed in his working place; that it was not the duty of defendants to keep the roof over such working place in a safe condition because "it is the well established rule that it is the duty of the miner to keep his working place safe." Plaintiff admits that deceased was killed in his working place, but insists that such fact "is not determinative of the question as to whether it was his duty to look out for his own safety."

Defendants rely upon the case of State ex rel. Central Coal & Coke Co. v. Ellison, 270 Mo. 645, 195 S. W. 722, where the opinion of this court in Goode v. Central Coal & Coke Co., Mo. App., 186 S. W. 1122, was quashed on the ground of error in an instruction which broadened the issues made by the pleadings. With regard to the merits of the case the Supreme Court remarked (270 Mo. 1. c. 651): "According to his petition he was directed to remove these 'pillars' of coal and thus close that portion of the mine from further mining operation. Under the well established mining law of the State, it is the duty of the miner to keep his working place safe, and the duty of the master to keep the entries (the places generally used by many miners) in a condition of reasonable safety." We think this broad language was unnecessary to the decision; for it appears from two previous opinions in the same case that "the parties agree that it was the duty of miners thus employed to attend to the safety of the place in which they were working and the great weight of the evidence is to the effect that defendant owed such miners the duty of reasonable care to keep all other places such as entries and the like in a reasonably safe condition." Goode v. Central Coal & Coke Company, 167 Mo. App. 169, 171, 151 S. W. 508, 510. See also 179 Mo. App. 207, 166 S. W. 844.

In Teter v. Central Coal & Coke Co., 201 Mo. App. 358, 213 S. W. 135, the plaintiff was injured by rock falling from the roof of an entry, at a place where he was engaged in opening a lateral excavation which was eventually to serve as the neck of a room. He was injured while shoveling coal which had been shot down from the wall of the entry. It was held that the trial court did not err in overruling the defendant's demurrer to the evidence. After referring to the Ellison case, supra, the court said (201 Mo. App. 1. c. 542, 543): "Although plaintiff attempted to limit his working place to the precise spot against the wall where he would stand to cut the room neck, we think there is no question but that his working place extended beyond that, and that the place where he was injured was his working place. However, he was also injured in the main entry, a place that it is held is the master's duty to keep in a reasonably safe condition. The entries of a mine are used by all classes of employees. * * * The facts in this case present a situation that has not heretofore been before an

appellate court of this State. It is apparent that we cannot apply any fixed rule and say as a matter of law that plaintiff was required to keep the place at which he was injured in a reasonably safe condition, nor can we say that it was defendant's duty to do so. Plaintiff was hurt not only in his working place but in the main entry and it was clearly a question of fact to be determined under proper evidence as to whose duty it was to look after the rock and coal that fell upon plaintiff. As before stated, there was evidence, pro and con, that it was custom and practice in this mine for defendant to keep the place where plaintiff was injured in a reasonably safe condition, and defendant had ample time after it discovered that the rock was loose to have remedied the situation."

In Schillings v. Big Creek Coal Co., Mo. App. 277 S. W. 964, the miner was killed by a rock which fell from the roof of an entry. At the time of his death he was engaged in digging a space in the bottom of the entry, about 3 feet wide, in which to lay the track. The track to be laid was a switch into a room neck. The defendant contended that its demurrer to the evidence should have been sustained, first, because deceased was injured in his working place, which it was claimed as a matter of law he was required to secure; and further, because plaintiff's evidence showed that it was the practice and custom for the miners to sound the roof over their working places. The evidence was conflicting as to the respective duties of the employer and the miner. In holding that a submissible case was made, the court said (277 S. W. l. c. 965): "We think the fact that deceased was injured in his working place is not determinative of the question as to whether it was his duty to look out for his own safety. We are not unmindful of the fact that in the case of State ex rel. v. Ellison, 270 Mo. 645, 651, 195 S. W. 722, the Supreme Court stated: ''Under the well established mining law of the state, it is the duty of the miner to keep his working place safe, and the duty of the master to keep the entries (the places generally used by many miners) in a condition of reasonable safety.' But, as we pointed out in the case of Teter v. Central Coal & Coke Co., 201 Mo. App. 538, 213 S. W. 135, this rule cannot be applied to all situations. In the case at bar, as in the Teter case, deceased was not only at his working place but in one of the entries of the mine where, as stated by the Supreme Court in the case cited, it was the duty of the master to maintain a reasonably safe condition. So it became a question of fact for the court, sitting as a jury, to determine whose duty it was to inspect and keep reasonably safe the roof of the entry in question, and there was ample testimony tending to show that this duty devolved upon defendant. Defendant attempts to distinguish this case from the Teter Case, by saying that in the latter case the accident occurred in the main entry, while in this case it occurred in an entry under construction and not in general use. The facts do not bear out the contention that the entry in this case was not in general use."

The Teter and Schillings cases were decided by this court. Now defendants argue that in both of those cases "the injury took place in the entry, an open entry * * * where numerous persons were obligated to pass, and, therefore, the court said it was a question of fact for the jury to determine, as to whose duty it was to properly care for the man's working place"; and that in the instant case "the plaintiff and the trial court were apparently confused by the issues, by reason of the fact that the deceased was killed in an entry, and disregarded the fact that the end of the entry was his working place, and was not an entry that had been previously opened for general use, but was being mined by the miner the same as a room or any other working place wherein the miner might be located."

While the deceased was killed in an entry and at a place used by other employees in the performance of their duties, it is true, as defendants state, that such place was not "used by a number of miners as a passageway" in going to and from their working places in other parts of the mine. Nevertheless, we think defendants' position is untenable. As indicated, their view is that the Teter and Schillings cases hold that where a miner is injured in his working place and such place is a "main entry" (an entry "generally used by many miners"), the question whether it was the duty of the miner or the employer to keep the working place safe is one of fact, determinable with reference to the actual custom and practice in the mine; but that the same cases hold or at least recognize that where the injury complained of occurs in the miner's working place and that place is not in a "main entry" there can be no recovery against the employer because a miner is under a duty, as a matter of law, to keep such a working place safe. We can think of no satisfactory reason for making such an arbitrary distinction between these two classes of cases and defendants have offered none.

It must be conceded that there is a certain lack of precision in some of the language in the Teter and Schillings cases. We think it is clear, however, that the decisive question to be determined in each of those cases was not simply whether the place where the accident occurred was the miner's "working place" and if so whether such place was in a "main entry," but whether, under the custom and practice in the mine, the miner or the employer was responsible for the condition of the place in question. In the Teter case, the court said (201 Mo. App. l. c. 543) : "It is urged that plaintiff's instruction No. 1, which purports to cover the entire case and direct a verdict, was erroneous in 'that it ignores the fact that plaintiff could not recover, if injured at his working place. It authorizes a recovery if he was injured in the main entry.' As we have before stated, the question whether plaintiff was injured in his working place or in the main entry is not determinative of this case. Instruction No. 1 properly submitted to the jury the question as to whose duty it was to keep the place in which plain-

tiff was injured in a reasonably safe condition. It is claimed that this instruction conflicts with defendant's instruction No. 1, the latter instruction told the jury that if plaintiff was working in his working place, either in the main entry or elsewhere, that he could not recover. While there is conflict in the two instructions, the same was invited by the defendant; its instruction was improper and it cannot now complain." In Luellen v. Pickering Coal Co., Mo. App. 242 S. W. 143, 145; this court in discussing the Ellison case, supra, said: "* * * Moreover, it is obvious that the Supreme Court did not have in mind the enunciation of a hard and fast rule to the effect that under any and all circumstances it was the duty of the miner to keep his working place safe."

Defendants also rely upon the following cases: Matthews v. Central Coal & Coke Co., Mo. Sup., 177 S. W. 650; Cunningham v. Doe Run Lead Co., Mo. Sup., 4 S. W. 2d 802; Biondi v. Central Coal & Coke Co., 320 Mo. App. 1130, 9 S. W. 2d 596. These cases do not support defendants' argument. In the Matthews case a miner was injured by rock falling from the roof of a room neck. The testimony was conflicting as to whether it was the duty of the miner or defendant to inspect the roof of the room neck. It was held that the trial court properly refused to direct a verdict for defendant. There is nothing in the Cunningham case that resembles the facts in the instant case. In the Biondi case the evidence was conflicting as to whether the miner was killed in his working place, but there was no dispute as to the respective duties of the miner and the employer. A judgment against the defendant was affirmed on appeal. We have found no case which holds that a miner is under a duty to keep his working place safe regardless of the custom and practice in the mine.

The only question raised by defendants in connection with their second assignment of error is whether the duty to secure or remove the rock in question rested upon the deceased or upon defendants. Viewing the evidence in the light most favorable to plaintiff, we hold that there was substantial evidence from which the jury could reasonably have found that it was the duty of defendants, under the custom and practice in the mine, to secure or remove the rock. It follows that the motion for a directed verdict was properly overruled.

Defendants complain that the court erred in giving plaintiff's verdict-directing instruction 2, which required the jury to find, among other things, that "the defendants, under the rules and customs then in existence in said mine, were under a duty to inspect the roof at the place where deceased was working and knew, or in the exercise of ordinary care could have known, of said condition of said roof at the place where deceased was working and that said rock was likely to fall and it was unsafe for decedent to work thereunder * * *." It is contended that this part of the instruction broadened the issues made by the pleadings, because the amended petition did not allege that

defendants were under a duty to inspect the roof at the place where deceased was working. There is no merit in this contention. The amended petition alleged "that it was the duty of the defendants to exercise ordinary care to keep and maintain the roof of said entry at the place where deceased was employed as aforesaid in a reasonably safe condition and to this end to exercise ordinary care to *discover* the rocks likely to fall from said roof and to either remove the same. or prevent the falling of said rocks by placing adequate timbers or other support thereunder." (Italics ours.)

Defendants further contend that even if they were under a duty "to inspect the roof of a man's working place, then, if such inspection was done, it became the obligation of the plaintiff to allege and so instruct, that such inspection was negligently done. There is no such allegation in the petition; neither is there evidence in the case to show that if an inspection had been made, one could have determined by such inspection that the rock was likely to fall, and thereby fall and injure the deceased. The court, by said instruction has broadened the issues laid down in the pleadings, and has not properly submitted the issues in its instructions." A party is entitled to have his own theory of the case submitted by instructions provided the instructions are within the scope of the pleadings, are correct in form, and are supported by substantial evidence. We have already outlined the evidence and need not repeat it here. It is clear that plaintiff's evidence tended to support the facts hypothesized and submitted by instruction 2. Furthermore, instruction 2 did not broaden the issues made by the pleadings. We hold, therefore, that the court did not err in giving this instruction.

The judgment should be affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.