Horace **FAUGHT** (Plaintiff), Respondent,

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY CO., a Corporation (Defendant), Appellant.**

**No. 47120.**

Supreme Court of Missouri,

Division No. 2.

July 13, 1959.

James L. Homire, W. W. Dalton, Laurance M. Hyde, Jr., St. Louis, for (defendant) appellant.

Hullverson, Richardson & Hullverson, St. Louis, for (plaintiff) respondent.

BARRETT, Commissioner.

The plaintiff, Faught, a retired track employee, brought this action under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., to recover damages for injuries allegedly sustained in 1955. While Mr. Faught claimed to have been injured in 1955, certainly in the first four months of that year, he continued working on the day of his injury and throughout that year and, except for brief intervals, until he was discharged as unable to work in November 1956. It was "about a year" after he was supposed to have been accidentally injured that he received, other than home remedies, medical attention. The suit was filed in September 1957, and the claim is that he was injured near Galloway on the Ozark branch when the section crew of which he was a member was "laying rails" near milepost 248 plus 10. The claimed circumstance was that he and three others were required to carry or "snake" an 825 pound rail up a rough, rocky incline to the track and that while holding one handle of the rail tongs and walking backward he was caused to step into a grass-hidden ground hog hole thus throwing the weight of the heavy rail on him and injuring his back. The specific charges of negligence were failure to furnish sufficient help, ordering and directing four men to carry the heavy rail when the foreman knew that four men were inadequate for the task, and failure to use other available means of lifting and moving the rail. Upon the trial of the cause ten members of the jury found the issues in favor of the plaintiff and fixed his damages at $20,000. The railroad does not challenge the sufficiency of the evidence to support the finding of negligence in the respects submitted; it does contend, however, that its right to a fair trial was infringed in three material respects and that for those infringements it is entitled to a new trial at the hands of this court.

In empaneling the jury both plaintiff's counsel and defendant's counsel inquired of the panel whether any of them knew or had had any experience with named lawyers, investigators, detectives, and a certain claim agent. In his turn defense counsel said, "Further, *associated with* Mr. Hullverson is Mr. Joe T. Meierotto, 530 East Madison Street, Springfield, Missouri." Counsel then engaged in a colloquy and Mr. Hullverson said, "you know he has no *connection* with me." He said, "Mr. Meierotto is a man for whom I tried a lawsuit many years ago. * * * Occasionally someone is recommended by him to my office." Mr. Hullverson finally said, "He has no *interest* whatsoever." And defense counsel replied, "I will withdraw it, but I have seen correspondence on it." On cross-examination of Mr. Faught it developed that Mr. Meierotto had told him about Mr. Hullverson and had gone with him to Mr. Hullverson's office in St. Louis before his suit was filed. At the conclusion of the cross-examination defense counsel moved for a discharge of the jury on the ground that he had been deprived of the right to inquire of the panel concerning any acquaintance with Mr. Meierotto because, he said, it then developed that Mr. Meierotto had some *"connection"* with the case. It was also developed that when Mr. Faught was to sign answers to interrogatories Mr. Hullverson sent the interrogatories to Mr. Meierotto and he obtained a notary public, called Mr. Faught at Nichols Junction, had him come to his home in Springfield to sign and be sworn to the interrogatories.

■■ Defendant claims in these circumstances that it was denied a fair trial, that Meierotto was "interested" and "active" in the case and that counsel was deprived of the right to properly examine and challenge the members of the panel. The parties argue whether in these circumstances Meierotto had an "interest" in the case or was "associated with" or "connected with" counsel for plaintiff. The argument is rather beside the point, Mr. Hullverson had once successfully represented Mr. Meierotto (Meierotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161), and he of course had a right to recommend clients and perform routine chores for counsel, perhaps. And in empaneling a jury counsel should not be permitted to inquire into extrinsic, collateral matters which could have no bearing on a juror's qualifications or his bias. But the problem here is not of the jurors' qualifications (V.A.M.S. § 494.190 and compare 50 C. J.S. Juries § 218(b), p. 956, and State v. Bounds, 216 Mo.App. 236, 262 S.W. 411), a party in examining and empaneling the jury is entitled to in good faith put such questions as will enable him to exclude persons who for any reason may not be fair or impartial. 50 C.J.S. Juries § 275, p. 1039; 31 Am.Jur., § 139, p. 121. And in some circumstances, to test the bias of a juror, a party may inquire into his relationship with "persons interested in the action but not parties of record" even though the fact would not necessarily disqualify the juror. 50 C.J.S. Juries § 275(b), p. 1043; 31 Am.Jur., § 193, p. 167; Plater v. Kansas City, 334 Mo. 842, 68 S.W.2d 800.

But in this case, after the facts were fully developed, defense counsel moved for a mistrial (Gate City National Bank v. Bunton, 316 Mo. 1338, 296 S.W. 375), he did not ask to then examine the panel as to any knowledge or acquaintance with Mr. Meierotto (Zein v. Pickel Stone Co., Mo.App., 273 S.W. 165), and he did not offer to sustain the defendant's burden of stating or establishing facts from which bias on the part of any juror could have been inferred. 50 C.J.S. Juries § 277, p. 1060; Murphy v. Graves, Mo., 294 S.W.2d 29. Mr. Meierotto lived in Springfield, the case was tried in St. Louis, Mr. Meierotto did not testify as a witness and other than as noted his. name was not mentioned throughout the trial. The entire matter was probably best summed up by the court in its denial of the motion to discharge the jury: "The Court is of the opinion that the situation is not sufficiently prejudicial to justify the declaration of a mistrial. Mr. Meierotto lives in Springfield. The question was withdrawn by counsel and the fact that it is true that the testimony indicates that Mr. Meierotto had some connection with the matter, does not seem to the Court to indicate that he is interested to the extent that it not being inquired about would justify a mistrial." Mr. Dalton: "The Court takes the position it is not prejudicial?" The Court: "I don't have to take the position—I take the position it is not sufficiently prejudicial to justify a mistrial." In these circumstances it may not be said that the trial court abused its discretion or that it manifestly erred as to a matter materially affecting the merits of the action (V.A.M.S. § 512.160, subd. 2), in overruling the motion for a new trial. Zein v. Pickel Stone Co., supra; Plater v. Kansas City, supra; Carter v. Rock Island Bus Lines, 345 Mo. 1170, 139 S.W.2d 458.

In March 1955, Mr. Faught was a member of a section gang consisting of himself, Arthur Wood, John Eskina and Elisha Marbut, track laborers, and Hardy Simmons, foreman. Mr. Simmons died just before the case was tried. Wood and Eskina were defense witnesses and in substance testified that they had no knowledge of Mr. Faught's having been injured while carrying a rail with them and they had no knowledge or recollection of any rail being laid on the Ozark branch in March 1955. By his own admission Marbut had told defense counsel just a

few days before the trial that he had not seen Mr. Faught have an accident. Nevertheless, he appeared as a witness and corroborated Faught's testimony that he was injured while carrying a rail. In his answers to interrogatories Faught said that he did not remember the names and addresses of the men with whom he was working, that their names and addresses were in the railroad's account books. He did say, "I remember the first names of some of the men but I never did know their addresses. Those I remember are Art, *Marvin* and John." In his direct examination Mr. Faught testified that among the men working with him was Marbut and he said, "Marbut was on my same side backing up." On cross-examination he again stated that Marbut was working with him when he was injured and he said that he knew Marbut's name. Furthermore it developed that about a year before the trial he had gone with a lawyer, prior to the date of his answer to the interrogatory, to Marbut's home in Monett and had talked to him. When Marbut appeared as a witness defense counsel objected to his testifying because he was "not listed" in the answer to interrogatories even though Faught had admitted on cross-examination that he knew his name. The court overruled defendant's objection to his testifying.

■ Of course, in view of Marbut's statement to defense counsel that he had not seen Faught have an accident, counsel may have been surprised and astonished at what he testified to as a witness but he could not have been surprised that his correct name was not given in his answer to the interrogatory because in October of the same year, 1957, the railroad in its answer to interrogatories listed Marbut as a member of Faught's section gang. On cross-examination Faught said, "We always called him Marvin. I didn't know what his name was." The defendant did not claim "surprise"; it only contended, particularly in view of the essential purposes of discovery (State ex rel. Cum-

mings v. Witthaus, 358 Mo. 1088, 219 S. W.2d 383, 8 A.L.R.2d 1124) that Marbut should not be permitted to testify because his name was "not listed" in the answer to interrogatories, and again, in these circumstances, it may not be said that the trial court so manifestly abused its discretion that this court should intervene and grant a new trial. Central & Southern Truck Lines v. Westfall GMC Truck, Mo. App., 317 S.W.2d 841, 848; Fitzpatrick v. St. Louis-S. F. Ry. Co., Mo., 300 S.W.2d 490, 500.

■ The third respect in which the appellant contends it was denied a fair trial has to do with time, the date on which Mr. Faught is supposed to have been injured; specifically, it has to do with the month in which he was injured. The railroad now claims that to its surprise and prejudice the court erroneously permitted the plaintiff, after a motion for a more definite statement had been sustained, to introduce evidence relating to times and occasions other than in or during the month of March 1955. In this connection it is urged that plaintiff's verdict-directing instruction submitted and authorized a finding of a time other than that specified in the pleadings, and that the court erred in refusing defendant's proffered instruction which directed a verdict for the defendant upon a finding of the mere fact that no rails were laid on its track near Galloway in March 1955. The respondent, among other matters, briefs and argues the question of whether there was a "variance"; he contends, if there was a variance, that it was not material and essential either to his cause of action or necessary for the defendant to know in order to properly prepare its defense.

In large measure the argument on both sides is factitious; the specific date or month of an injury, if within the period of limitations, may not be descriptive of the subject of the action or of the essence, so to speak, of a cause of action under the Federal Employers' Liability Act. So

too of the general rules of pleading and of instructions presenting one's theory of a defense or of a cause of action; neither the evidence nor the instructions may be broader than the pleadings, one may not plead one state of facts and theory and to the unprepared surprise of his adversary recover on another and different theory and state of facts. Illustrative of these particular problems see the cited cases of Robertson v. Vandalia Trust Co., 228 Mo. App. 1172, 66 S.W.2d 193; Benham v. McCoy, Mo., 213 S.W.2d 914, and Spicer v. Hannah, 241 Mo.App. 1215, 247 S.W.2d 864. The problem here transcends, in a manner, even the essence and essentials of a cause of action under the Federal Employers' Liability Act and the normal problems of variance, surprise, and the right to amend pleadings. The problem here does not involve the substantive law, it involves the essential purposes of the Code of Civil Procedure, of discovery, and the trial and determination of the basic controversial issues as fairly delimited by the pleadings, the interrogatories, and the conduct of the parties. Gerber v. Schutte Investment Co., 354 Mo. 1246, 194 S.W.2d 25; Central & Southern Truck Lines v. Westfall GMC Truck, supra.

The number of cars in a train, the specific place of laying rails, the precise date or time of an occurrence and injury and other similar matters may not be material or essential in a substantive sense (71 C.J.S. Pleading § 543, p. 1108), but in particular circumstances the precise time of the happening of an event may be so material as to definitely delimit the issues and proof and thus limit a party's right to recover even under the Federal Employers' Liability Act. 41 Am.Jur. §§ 377-378, p. 552. Even in an action against a railroad for negligent injury a petition which fails to allege the date of the occurrence is subject, for obvious reasons, to a motion to make more definite and certain. 44 Am.Jur., § 610, p. 863; 65 C.J.S. Negligence § 189, p. 907; annotations 115 A.L.R. 1074; L.R.A.1915A, p.

781; Horner v. Missouri Pac. Ry. Co., 70 Mo.App. 285. This does not mean, of course, that a plaintiff should not be permitted to recover if he does not know or is unaware of the date of his negligent injury; but there must be some fairly legitimate reason or excuse for his lack of knowledge and failure to state the time of negligence and injury. Melvin v. St. Louis-S. F. Ry. Co., 89 Mo. 106, 1 S.W. 286; Horner v. Missouri Pac. Ry. Co., supra.

It is said that Mr. Faught is an illiterate man, kept no records, did not know the precise date of his injury, and that the defendant railroad seeks to take unfair advantage of his misfortune of illiteracy. Mr. Faught, born in Christian County, is fifty-one years old, attended school but seven or eight months and so he is unlettered, can neither read nor write, but that does not mean that he is lacking in innate mental capacity or intelligence or that any of his obviously normal faculties of memory and perception or his power of description have been impaired in the slightest degree or that he is gullible or that even clever counsel may unfairly have the advantage of him in any of these respects. As a matter of fact the problem involved here did not arise or inhere in Mr. Faught's lack of formal education.

The basic problem as to the materiality and force of time in this case arose and must be considered in these circumstances: In neither his original nor his amended petition did the plaintiff allege or claim that by reason of disabilities due to a lack of formal education he did not know the month in which he was injured. In both petitions he alleged that "On or about the month of March, 1955" he was injured while laying rails. The railroad filed a motion for a more definite statement in which it asked that plaintiff be required to state the month and the day of the month in 1955 upon which he claimed to have been injured. The motion was sustained by the trial judge before whom the case was then pending, and thereafter,

pursuant to the sustention of the motion, a "Memorandum for Clerk," signed by counsel for plaintiff and for defendant, was filed and the memorandum plainly and unequivocally stated that plaintiff amended his petition to read "during the month of March, 1955." In his answer to interrogatories plaintiff had said, "As near as I can remember it was about 11:00 a. m. or about lunch time in March of 1955. The exact date I cannot remember. I kept no records." Thereafter, as Mr. Faught testified on direct examination and said that he was injured, "Well, around March, 1955," that he did not know the exact date and as to the month said, "Somewhere around March," a colloquy arose as to what he had said in his interrogatory, in his deposition, and as to what he had been required to plead and what he had in fact pleaded. Counsel for plaintiff first said that Mr. Faught did not know the exact date, "On or about; within the month; that is as much as he can say." Then counsel said that the petition had been amended, that the words "on or about" had not been stricken and following those words the petition had been amended by interlineation by inserting the word "during" so that the petition read "on or about during the month." Finally, after examining the entries, the court said, "It is not very clear, but in view of the fact that the amendment as made has a small 'd' on the word 'during,' I take it that 'on or about' was not stricken." Defense counsel stated that he was not in a position to go ahead; "We are pleading surprise under the sworn affidavit." Counsel did not elaborate upon the claim of surprise, the court denied the claim and the trial of the cause proceeded. The phrase "on or about" and the word "during" have been employed in innumerable connotations and meanings (28 C.J.S., p. 593; 67 C.J.S., p. 496); but neither singly nor in this bizarre combination, however, do they place the date of an occurrence at large, and the opinion is hazarded that plaintiff's counsel, even by interlineation, could compose a more intelligible, informative beginning for a sentence than the dubiously awkward, "On or about during the month of March, 1955."

Nevertheless, on Mr. Faught's cross-examination there were these questions and answers:

"Q. What time of day was it? A. Between eleven and eleven-thirty.

"Q. When was it? A. In March.

"Q. In March? A. Yes.

"Q. That is correct? A. Sometime in March.

"Q. It was around the third week in March, I believe you said (in his deposition)? A. Well, somewhere along there.

"Q. About the third week in March, 1955? A. I wouldn't give you a sure answer on that, because I really don't know.

\*   \*   \*   \*   \*   \*

"Q. All right. I will ask you, at that time, about the third week of March, you were laying rails; is that correct? A. That is right."

And so, while Mr. Faught had been equivocal on direct examination as to the date of his injury, he in fact unequivocally testified to and fixed the date of the occurrence as March 1955. The other witness to his accident and injury, Marbut, did not reply to or answer the statement and question, "Do you remember the exact date of that injury? He says that it was around March 1955; would you agree that it was some place in that locality?" The next question on direct examination was: "Now, I don't know whether you answered that, whether it would agree with the time you remembered, at March 1955, or thereabouts?" He answered, "About in there somewhere." On cross-examination the question was, "This was March, 1955; is that correct?" His answer was, "I don't know whether it was or not." "Q. You don't know? A. No, I never thought nothing about it. It wasn't me that was really hurt, you see."

As stated, the railroad's evidence was to the effect that no rails were laid on the Ozark branch in March 1955, and its medical evidence was that Mr. Faught's disability was due to arthritis, that he had not sustained a traumatic injury of any kind. In cross-examining the division engineer counsel for the plaintiff inquired whether he had examined the records for February or April to determine whether Mr. Faught had worked in those months; he gave the negative answer that he had not examined the records. So too the roadmaster said that he had not examined the records and did not know whether Mr. Faught had worked near milepost 248 plus 10 in February or April. Eskina, a fellow track laborer, testified that no rails were laid in March. On cross-examination he was asked whether any rails had been laid in February or April; he answered, "It could have been." The other member of Faught's section gang, Arthur Wood, had no recollection of Mr. Faught's having been injured or of the gang laying rails in March. On cross-examination he was asked whether he remembered snaking rails with Eskina, Marbut and Faught, whether it was March, February, April or July. He answered, "Well, I don't remember snaking any rails with that small amount of men."

Thus there was in fact no substantial evidence that any rails were laid or that Mr. Faught was injured in any month or on any other date than March 1955, and the railroad was prepared and did meet that issue. Balancing all these particularly detailed circumstances, it may not be said that there was manifest error with respect to the applicable rules of law as to time or in the giving or refusing of instructions or in the proof as to the date of Mr. Faught's claimed injury.

Since there was no manifestly prejudicial error in either of the respects asserted, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.