CYRUS E. CARTER, Appellant, v. ROCK ISLAND BUS LINES, Incorporated, a Corporation.—139 S. W. (2d) 458.

Division Two, May 4, 1940.

*Max Krug, K. Martin Kirschner* and *Randolph & Randolph* for appellant.

*Mayer, Conkling & Sprague* for respondent.

COOLEY, C.—Plaintiff appeals from a verdict and judgment in favor of defendant in a suit for damages for $15,000 brought by plaintiff and tried in the Buchanan County Circuit Court, for personal injuries claimed to have been sustained by plaintiff through defendant's negligence while plaintiff was a passenger on defendant's bus. The record here presents a rather unusual situation. The sole question presented is the refusal of the trial court to permit plaintiff's counsel to question prospective jurors, on *voir dire* examination, as to whether or not they had any connection with the American Fidelity & Casualty Company, of Richmond, Virginia, claimed by plaintiff to have carried liability insurance for defendant and to be defending the case. The pleadings are not before us. Though a bill of exceptions was allowed and filed the only portion thereof abstracted is that relating to the *voir dire* examination or attempted examination of the jury panel. Nothing concerning the evidence, the instructions or events during the trial is shown.

On the *voir dire* examination, the following occurred, before the court and out of the presence and hearing of the prospective jurors:

"Mr. JOHN RANDOLPH: (for plaintiff) Counsel for plaintiff are informed that the American Fidelity and Casualty Company of Richmond, Virginia, is defending this cause and we ask counsel for defendant if that is true.

"Mr. CONKLING: (for defendant) No, it is not.

"Mr. JOHN RANDOLPH: We are informed by the Public Service Commission that this defendant had a policy of that company on file which covers that accident. If that company has any interest in the matter at all we desire to interrogate the jury about any connection with that insurance company they may have.

"Mr. CONKLING: That company has no interest in this case.

"Mr. JOHN RANDOLPH: We ask permission on account of the information we have from the Public Service Commission to interrogate the jury about that company. And further, the representative of the company has made overtures of settlement in the matter, so eventually there will be some question as to the interest of this company.

"Mr. CONKLING: I will state to the Court that the company has no interest in the outcome of this case. I want to be wholly fair with the counsel and the Court: As I understand it, there was a policy of insurance on an automobile which was owned by this defendant and usually operated in its business. The automobile which was operated on the day in question was not covered, according to my information, by this policy of insurance."

Defendant's counsel objected to the proposed interrogation and the court said plaintiff would have to make a further showing. Plaintiff's counsel then offered in evidence his Exhibit A, which he claimed was a letter from the secretary of the Public Service Commission (not certified), reading as follows:

"Certificate No. 264

"Mr. K. Martin Kirschner

"Argyle Building

"Kansas City, Missouri

"Dear Sir:

"Replying to your letter of August 1 regarding accident which your client, Mr. C. E. Carter, and the Rock Island Bus Line were involved, we advise you that the insurance policy on file here covers any accident occurring while the assured is operating pursuant to the certificate of convenience and necessity issued to him by this Commission. This means that if the automobile which was being used by the assured at the time of the accident was being operated under a Travel Order and was running over the regular route of the bus company, it would be covered under the policy which is on file here. This policy is No. 19691 of the American Fidelity and Casualty Company, Inc., of Richmond, Virginia.

"In reply to the third paragraph of your letter we wish to advise that the operator is primarily liable for accidents but he is not permitted to operate unless an insurance policy is filed, assuring that payment of any judgment against him will be made by the insurance company.

"Yours very truly,
"Robert E. Holliway,
"Secretary."

Defendant objected for, among other reasons, that the Public Service Commission could not, by letter determine who was liable or interested in the case, that the letter was *ex parte*, not the best evidence of coverage, was only hearsay and that there was no travel order issued. The court sustained the objection, saying:

"I don't think this letter is admissible in itself. It doesn't appear to be any certified copy of order, or anything of that sort from the Public Service Commission. It is only a letter made by someone who signs himself as secretary and giving his version of a good many matters which I do not think would be admissible testimony in this case."

[In his motion for new trial appellant does not seem to complain of the exclusion of said Exhibit A.]

Following the offer and rejection of said Exhibit A, Mr. Max Krug, one of plaintiff's attorneys, was sworn. He testified, over defendant's objections, that, after suit had been filed,

"Mr. Conkling, and a gentleman purporting to be an adjuster for this insurance company, and Mr. Kirschner, were in my office, I believe some time in May, but I would not be sure of the exact date. Mr. Conkling, I believe, brought this gentleman to our office and we had some talk of settling and as I recall the conversation now, the adjuster said that if we would get down to earth, we might talk business."

Mr. Kirschner, another of plaintiff's attorneys was sworn and testified, in substance: that he was present at the conference Mr. Krug mentioned; that Mr. Conkling came in with a man whom he introduced as Mr. Monroe; that they discussed the "settlement of this lawsuit;" that Mr. Monroe was "introduced as being with some adjustment company;" that in a later conversation with Monroe (who took him back to Kansas City), Monroe told him he was with the Markel Adjustment Company, and the American Fidelity & Casualty Company of Richmond, Virginia; that said Markel Company "represented a number of such small companies who qualified with the Public Service Company."

He testified also to a later conversation with Mr. Markel, of the Markel Adjustment Company, relative to a possible settlement of the case, which came to naught, but which, from his testimony, seemed calculated to give the impression that said Markel Company

was or appeared to be acting in behalf of the American Fidelity & Casualty Company.

All of the foregoing testimony was heard by the court over the objections of defendant.

At the close of Mr. Kirschner's testimony Mr. Conkling again stated to the court,

"We repeat our statement that we are advised that there was no insurance and no coverage at all on this automobile in which plaintiff alleges he was riding on the day the accident occurred, named in his petition, and that the company is not interested at all in the outcome of this case;" to which was added, by Conkling's co-counsel, the further reason that there was no showing the persons who it was claimed had talked with plaintiff's attorneys really represented said insurance company and that agency could not be proved by the mere declaration of the purported agent.

Plaintiff then called Mr. Conkling, defendant's attorney, to the witness stand. He testified that he was employed by a Mr. Wisdom and a Mr. A. J. Hitt, at Maysville, Missouri; that he thought suit had already been filed when he first heard of Wisdom, who lived in Kansas City, Kansas; that "at one time" (time not stated) Wisdom was an "insurance company adjuster" and witness thought he was such at the time he, Conkling, was employed, but further testified, "If he (Wisdom) had any connection with the American Fidelity & Casualty Company, I never heard of it. He never so stated to me."

Mr. Kirschner, recalled, testified that he knew Mr. Wisdom; that he spoke with Wisdom "concerning the settlement of this lawsuit," and Wisdom said he would not be in position to discuss settlement "because he was up in northern Missouri to gather more evidence concerning this case. When he returned he would then discuss the matter with me." He added, "About that time, Mr. Wisdom, apparently, was removed, and the Markel Adjustment Company came in." He also said that Mr. Wisdom was an "insurance adjuster . . . still is to my knowledge," and that the American Fidelity & Casualty Company was mentioned in that conversation as being "one of the smaller insurance companies" and as "having connection with this lawsuit." Defendant's motion to strike out that evidence was overruled. No further evidence was offered. The court, at the close of the hearing, denied plaintiff's request to interrogate the panel as above indicated, plaintiff excepting.

█ It is well recognized that it is, generally speaking, prejudicial to a defendant in a suit of this kind to have injected into the case the suggestion that the defendant is protected by liability insurance and therefore will not or may not have to pay a judgment against him but that an insurance corporation will ultimately have to bear the burden of payment thereof. For discussion of the reasons of this

well established rule see:—Rytersky v. O'Brine, 335 Mo. 22, 27-8, 70 S. W. (2d) 538, 540; Olian v. Olian, 332 Mo. 689, 693, 698-99, 59 S. W. (2d) 673, 674-75-77, citing (among other cases) and quoting from Hannah v. Butts, 330 Mo. 876, 51 S. W. (2d) 4. See also Grindstaff v. Goldberg Structural Steel Co., 328 Mo. 72, 40 S. W. (2d) 702, 706. Appellant cites Galber v. Grossberg, 324 Mo. 742, 25 S. W. (2d) 96; Smith v. Star Cab Co., 323 Mo. 441, 19 S. W. (2d) 467; Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S. W. (2d) 268; Plannett v. McFall (Mo. App.), 284 S. W. 850. In the Galber case plaintiff's counsel, out of the hearing of the jury, offered to prove that the Globe Indemnity Company was interested in the defense of the case; that its claim agents and lawyers had prepared the case for trial; that the defendant's trial counsel was associated with the law firm employed by said company to defend the case; and that its physicians had examined the plaintiff and would testify at the trial. The record further showed that the defendant's trial counsel did not deny but merely disclaimed knowledge of said mentioned facts; that proof of said facts was offered for the purpose of establishing the right of the plaintiff to interrogate prospective jurors as to their relations or connections with the named insurance company. The court *refused to hear* any proof of this character and advised counsel that it would sustain an objection to such interrogation of the prospective jurors. We held that such action of the trial court was prejudicial error, justifying the granting of a new trial [which the trial court had done. (There were other grounds for granting a new trial.)]

In Smith v. Star Cab Co., supra (a much cited case), counsel, for the plaintiff, out of the hearing of the jury, inquired of counsel for the defendant if a certain indemnity company was interested in the defense of the case as insurer. Counsel for the defendant declined to answer. The court refused to permit interrogation of prospective jurors along that line, which this court said, in effect, was reversible error. Stress seems to be laid in that case upon the plaintiff's apparent good faith in seeking to interrogate the prospective jurors as to any connection with the named insurance company, and the reasons therefor are stated. But it is also pointed out that the defendant declined to disclose to the court (or to plaintiff's counsel) the fact, if a fact, that an insurance company was interested in the outcome of the case and might have to pay a judgment for the plaintiff, if such judgment should be rendered.

Maurizi v. Western Coal & Mining Co., supra, another frequently cited case, and cited by both sides herein, is along the same lines. There the defendant's counsel, as this court held, evaded the questions of the court and of the plaintiff's counsel as to whether the named insurance company was interested in the case. It seems that in that case the trial court permitted the proposed *voir dire* exam-

ination and this court held that the trial court had not abused its discretion in so doing.

In Plannett v. McFall (Mo. App.), 284 S. W. 850, the defendant's attorney claimed that the Maryland Casualty Co., which had carried insurance on the defendant, had, after investigating the case and preparing it for trial, attempted to disclaim liability because of alleged lack of cooperation from the defendant. The trial court suggested that the defendant be sworn and examined regarding the matter, which defendant's counsel declined to agree to, saying there was no occasion for putting in testimony, and proposed that plaintiff's counsel proceed with the examination, but over defendant's objection. The court thereupon permitted the proposed jurors to be interrogated. This ruling was held not to be reversible error.

In the above cases cited by appellant the question of good faith on the part of the plaintiff seems to be stressed. If good faith is not shown the injection of the fact or suggestion that the defendant carries insurance and that some invisible insurance company may have to pay the judgment is prejudicial error, even if adroitly done only on *voir dire* examination of the jury panel. The trial court must be alert to keep out of the case any such sinister influence. And since the trial judge presumably knows the counsel who appear before him and is in closer touch with the proceedings before him than we can be from the cold printed record it seems to us that in matters of this kind much must be left to the sound discretion of the trial court and only where a manifest abuse of discretion appears should this court interfere.

In the instant case the trial court did not refuse to hear evidence. It heard and considered all the evidence offered, much of which consisted of hearsay and purported extra-judicial statements or declarations of an alleged agent of the insurance company. It does not appear that defendant's counsel declined to divulge or attempted to evade giving information regarding whether or not the named insurance company was interested in the case. As counsel he stated to the court that said company was not interested and when called as a witness by plaintiff he so testified under oath.

The question arises, if the evidence before the court or the facts and circumstances, including the conduct of the defendant's counsel, would authorize a finding of good faith on the part of the plaintiff's counsel, or even if the court believed that the plaintiff's counsel was acting in the honest belief that he had the right to interrogate the jury panel regarding supposed or possible connection with an insurance company, does that *conclude* the court and make it *mandatory* that it allow the interrogation? We think not. This precise question does not appear to have been heretofore decided. We are not unmindful that a party to a lawsuit is entitled to a fair and impartial jury and to make such inquiries of prospective jurors

as may be reasonably necessary or proper to disclose any bias or prejudice in the mind of any prospective juror, which, in most cases no doubt, can only be done by the *voir dire* examination; and that a trial court will not be allowed to abuse its discretion by refusing to permit such interrogation, where apparently justified, as was held in the Galber, Smith and Maurizi cases, supra, cited by appellant. But it seems to us, keeping in mind the pernicious (to the defendant) influence of a suggestion of insurance, the opportunity of the trial court to see and hear and know counsel and its better opportunity to judge of matters of this kind in proceedings before it, some discretion must be allowed the trial court in determining such matters, and that where full hearing has been accorded, even though the plaintiff's evidence may indicate good faith on his part, yet if the trial court is convinced, on all the evidence heard and the facts and circumstances shown that in the interests of justice the proposed interrogation should not be allowed its ruling should not be interfered with by an appellate court unless there appears from the record a palpable abuse of discretion. We do not find in the record before us such palpable abuse of discretion. In our opinion the judgment of the circuit court should be affirmed. It is so ordered. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.