Catherine MURPHY, Respondent,

v.

John GRAVES, Appellant.

No. 45033.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Oct. 8, 1956.

Henry W. Buck, John R. Gibson, Albert C. McClain, Kansas City, for appellant, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, of counsel.

J. Marion Robertson, Kansas City, for respondent.

BOHLING, Commissioner.

Catherine Murphy sued Anna Beardsley and John Graves for $50,000 damages for personal injuries inflicted upon her by John Graves in the home of Anna Beardsley. John Graves was not quite 14 at the time involved. Albert C. McClain was appointed guardian ad litem for the minor defendant. His parents were separated and he had lived with Mrs. Beardsley, his grandmother, since he was 3 years old. The court gave a directed verdict for Mrs. Beardsley, and the jury returned a verdict for $17,500 against defendant Graves. A hearing was had on defendant's motion for new trial and the motion was taken under advisement. Thereafter the court entered an order conditioning the overruling of the motion for new trial on the entry of a remittitur of $5,500, "otherwise said motion will be sustained on grounds that the verdict is excessive." Judgment was entered for plaintiff for $12,000 upon the entry of

the remittitur of $5,500. Defendant Graves has appealed and contends error was committed in permitting plaintiff's attorney to interrogate the jurors on voir dire examination with reference to insurance; that the verdict of $17,500 was so grossly excessive it could not be cured by a remittitur; that the judgment of $12,000 is excessive and should be substantially reduced; that a new trial should have been granted on account of the misconduct of two jurors; and that error was committed in permitting plaintiff to introduce in evidence and display to the jury the bloodstained robe worn by plaintiff when injured.

Plaintiff and Miss Eloise Smith, her roommate, roomed at the home of Mrs. Beardsley in Kansas City, Missouri. A Mr. Felsing also roomed there. Plaintiff was a teacher in the public schools. On the evening of April 15, 1953, she understood that all but she had left the house. She was awakened while in her room by what she thought were footsteps. She went downstairs and saw defendant, whom she understood was with his grandmother. She told defendant she was going to eat. Defendant stated he had eaten but followed her into the kitchen. Plaintiff prepared something for herself and was seated at the table with her back to her kitchen cabinet. Mrs. Beardsley's cabinet was a little to her left. There was not enough space to pass between her chair and the cabinet. Defendant decided to prepare something for himself. Plaintiff offered to move but defendant said she was not in the way. Defendant stooped down to open his grandmother's cabinet. About that time something struck plaintiff in the back, knocked her out of the chair, and everything went "black" to her. She regained consciousness in a few seconds or minutes, and asked what struck her. Defendant did not answer. Plaintiff started to get up and he said "Don't get up." Plaintiff got up and, with her hand, felt a knife handle in her back. At plaintiff's direction defendant called an ambulance and had a neighbor come over. She was taken to the Menorah hospital, where the knife was removed under surgery, the purpose being to determine whether the knife could be safely removed without creating a hemorrhage, a precautionary measure. Plaintiff was dismissed from the hospital April 26, 1953.

The knife was embedded in the left part of plaintiff's back to its hilt, at a right angle to the body, about one inch from the spine and about the level of the fifth interspace, between the fourth and fifth ribs and had penetrated the lung for about one-half an inch, creating a one-inch laceration in the lung.

Defendant had purchased a spring-blade knife while visiting his father in Salina, Kansas, paying 98 cents. It had a 3-inch blade. He was expecting a phone call from his father who was in Kansas City, thinking they would go out and eat together. He thought he was the only one in the house. When defendant decided to get something to eat, he got a new box of crackers from his grandmother's cabinet, and took his knife out, evidently to open the box. He then stooped down to get peanut butter or something, and when he went to step back up he lost his balance. He testified: "The knife wasn't opened but I must have hit the trigger on it, and when it came open I stumbled against her." He had the knife in his right hand. He had not opened the cracker box at the time. The knife struck plaintiff in the back just under her left shoulder and above the back of her chair.

Following a colloquy between counsel for plaintiff and counsel for defendants before the court in chambers preliminary to the calling of the veniremen, in which plaintiff's counsel took the position that defendant Mrs. Beardsley was covered by insurance and counsel for Mrs. Beardsley and the minor defendant categorically denied that there was any insurance coverage in this case, and stated that he represented the two defendants personally, the court permitted plaintiff's counsel to inquire of the veniremen whether any

members of the panel were employees of or stockholders in the Royal Indemnity Insurance Company, the company that had issued a policy to Mrs. Beardsley, and whether any of them knew Mr. Ollie Simmons, an agent of said company.

Defendant's counsel had brought Mr. Simmons to plaintiff's counsel's office to show him there was no insurance coverage in this lawsuit. He stated that Mrs. Beardsley and Mr. Simmons were cousins; that Mr. Simmons had sold a policy of insurance to Mrs. Beardsley; that the policy provided coverage for Mrs. Beardsley if she had no more than one roomer and excluded coverage if she had more than one roomer; that plaintiff's roommate, as was also another person, were roomers of Mrs. Beardsley; that it was admitted that Mrs. Beardsley had three roomers at the time of this occurrence, and: "Now, there is no insurance and the Royal Indemnity Company, has so informed her. I am representing Mrs. Beardsley and John Graves in this lawsuit. There is no insurance; there is no coverage." Plaintiff's counsel stated that after reading the policy he did not agree.

 The usual practice before plaintiff's counsel inquires on voir dire with respect to insurance coverage of a defendant is to take the matter up with the court in the absence of the jury and inquire of defendant's counsel whether any liability company is interested in the case and, if so, the name of the company; and it is then the duty of defendant's counsel to state the true facts to the court. Carter v. Rock Island Bus Lines, Inc., 345 Mo. 1170, 139 S.W.2d 458, 461 [1–6]; Maurizi v. Western Coal & M. Co., 321 Mo. 387, 11 S.W.2d 268, 274 [8]; Hill v. Jackson, Mo.App., 272 S.W.2d 105, 107 [7, 8]. This is to establish reasonable cause on the part of counsel for plaintiff believing that an insurance company is interested in the case; good faith in making the inquiry. If defendant's counsel refuses to answer, Glick v. Arink, Mo., 58 S.W.2d 714, 718 [5]; Gerran v. Minor, Mo.App., 192 S.W.2d

57, 61, or evades the question, Maurizi v. Western Coal & M. Co., Gerran v. Minor, supra, or does not deny but merely disclaims knowledge of the fact of insurance, Galber v. Grossberg, 324 Mo. 742, 25 S.W. 2d 96, 97(II), or refuses to be sworn for questioning, Plannett v. McFall, Mo.App., 284 S.W. 850, 853 [5–7], knowledge of plaintiff's counsel of facts indicating insurance coverage has been held sufficient to sustain the voir dire inquiry. Consult Annotations, 4 A.L.R.2d 761(IV), 56 A. L.R. 1418(IV), 1472, 74 A.L.R. 849, 95 A.L.R. 388, 105 A.L.R. 1319.

The following observations bear upon the reasons for a showing of good faith on the part of plaintiff's counsel. "It is the common experience of practicing attorneys that it is highly prejudicial to a defendant's case for the jury to be informed that any verdict returned against the defendant will not hurt him, but will be paid by an insurance company." Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673, 674 [3].

" 'It seems to be the impression of the bar that the fact that the liability of a defendant in a tort action is covered by insurance will, in the minds of the average jury, not only justify a verdict for plaintiff but a very generous assessment of damages as well. The verdicts in many cases warrant that view.' " Olian v. Olian, supra, 59 S.W.2d 677, quoting Hannah v. Butts, 330 Mo. 876, 51 S.W.2d 4, 7(II).

 " 'To instill into the jurors' minds the idea that the defendant is not really interested in the outcome of the case, because, whatever may be the result, some one else will have to bear the loss, is very reprehensible, and, where it appears that such has been the adroit purpose and result, such conduct will meet with the punishment of a reversal; and counsel should not try to see how near they can come to the danger line without getting over it, since sooner or later they will inadvertently get over.' " Hill v. Jackson, supra, [272 S.W. 107] quoting Bright v. Sammons, Mo.App., 214 S.W. 425, 427. Con-

sult the cases cited and observations in Carter v. Rock Island Bus Lines, Inc., supra, 139 S.W.2d 461 [1].

█ Plaintiff did not produce or offer to produce any evidence on the issue. Plaintiff had the affirmative. Defendant denied that there was insurance coverage in the instant case. In Carter v. Rock Island Bus Lines, Inc., supra, there was evidence before the court that would authorize a finding of good faith on the part of plaintiff's counsel for voir dire inquiries respecting insurance coverage but the fact was controverted, and we ruled it was not mandatory on the court to permit the interrogation. A different result was reached in plaintiff's cited case of Gerran v. Minor, supra, under evidence presenting a different factual situation, including refusal to answer and evasion of inquiry by defendant's counsel. We read other cases to the effect that a showing of good faith is proper procedure before questioning the veniremen where insurance coverage is categorically denied. See Plannett v. McFall, supra; Maurizi v. Western C. & M. Co., supra. In Bennett v. Cauble, Mo.App., 167 S.W.2d 959, 961 [2], defendant's counsel stated that he did not appear on behalf of a named insurance company; that defendant had a policy with the company but that the company had notified him it was not liable and would take no part in the defense, and that he was representing the defendants personally; but if a judgment were recovered against his clients, he expected to recover from the insurance company, if possible. Upon this showing that the insurance company was not conducting the defense, it was held that prejudicial error resulted from counsel's voir dire inquiry whether any veniremen were connected in any way with the named insurance company.

While inclined to the view plaintiff should have adduced evidence on the issue, whether prejudicial error occurred in this respect is not necessarily decisive of this review as it appears from what is said hereinafter that defendant did not have the fair and impartial jury to which he was entitled under the law for the determination of his liability and the amount of plaintiff's damages.

Defendant's motion for new trial charged misconduct on the part of certain jurors in discussing the case between themselves and with each other before the case was submitted to them and prior to the time the court read the instructions to the jury and the final arguments were made. Section 510.330 RSMo 1949, V.A.M.S.; 42 V.A.M.S. Supreme Court Rules rule 3.22.

█ The trial court heard evidence on the motion for new trial, as it was authorized to do. Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 491 [3–5], 129 A.L.R. 795; Wood v. Claussen, Mo.App., 207 S.W.2d 802, 812 [12]. See 2 Houts, Mo. Pl. & Pr., 150, 151, § 452.

At the presentation of the motion for new trial Murel Goldsberry was called to the stand and testified as follows: He served as one of the jurors in the trial of the case. He was asked if he overheard any juror make remarks that there was insurance in the case. Plaintiff's counsel stated: "I object to that as leading and suggestive. He can tell what he heard, if anything." The objection was overruled. The witness answered in the affirmative and that it was juror Mr. Sinclair. "Q. Tell the circumstances, Mr. Goldsberry, uinder which this remark was made? A. It was right after the jury was picked and we were dismissed to go and get a coffee break. When we came back Mr. Sinclair walked up to me and said: 'This is an insurance case and I am for giving the teacher everything she has got coming.'" Witness then walked away from Mr. Sinclair and stated Mr. Sinclair walked over to some of the other boys and started talking to them; but he did not hear what Mr. Sinclair said to them. Witness avoided Mr. Sinclair after that. He further testified that immediately after they selected a foreman:

"Mr. Dell said he had a card that showed he was a preacher and he would like to make a little prayer. He started out for a prayer, but it ended up he would like for the school teacher to be reimbursed for all the pain and the time she had lost.

"Q. Did he mention how much he thought that would take to reimburse her? A. He was wanting $50,000.00.

"Q. Had you discussed the liability of this case at all? A. No, sir.

"Q. That was before any discussion, was it? A. Yes, sir. * * *

"Q. Following the offering of this prayer was there any discussion in the jury room about who this verdict should be for? A. No, sir.

"Q. What was the next topic of discussion that followed the prayer. A. To clear Mrs. Beardsley.

"Q. Following that, what was the next topic? A. To settle for a certain amount to give Miss Murphy."

He informed the court he realized the jury had been directed to find for Mrs. Beardsley. On cross-examination he was asked:

"Didn't you ask the rest of the jurors to discuss the verdict that you wanted them to? A. I tried to get them to discuss it, yes.

"Q. And they did, didn't they? A. Not very well.

"Q. You arrived at the verdict, you signed it, didn't you? A. I didn't sign it. I finally agreed to it at the last. * * *

"Q. How did you happen to come up here to testify today? A. Well, three or four days later Mr. McClain come around and I told him what I thought about the case, that I thought it was one of the worst trials I had ever been in, that there was a miscarriage. He didn't ask me, I told him that what I

should have done when Mr. Sinclair told me, I should have reported it, that at the time I didn't want to cause any trouble. I got a subpoena last night.

"Q. Mr. McClain talked to you three or four days after the case, is that right? A. Yes, sir."

■ As indicated, none of the objections now urged to this testimony were presented at the hearing on defendant's motion for new trial; that is, that allegations in the motion did not prove themselves; that a jury verdict cannot be impeached by the testimony of a juror; that the motion did not indicate defendant was unaware of the misconduct during the progress of the trial; and that there was no charge that the jury was influenced by the prayer in the jury room. A rule of evidence not invoked is waived and the evidence is to be given its natural probative effect. De Moulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 565 [3]. In the circumstances, the objections were waived and are not available to plaintiff on this appeal. Thorn v. Cross, Mo.App., 201 S.W.2d 492, 496 [4–7]; Cook v. Kansas City, 358 Mo. 296, 214 S.W.2d 430, 433 [9]; Milbourne v. Robison, 132 Mo.App. 198, 110 S.W. 598 (pointing out that the evidence was competent but came from an incompetent source), and cases mentioned infra.

■ Thorn v. Cross, supra, involved the misconduct of a juror who, when the jury retired for deliberation, informed the jurors of purported personal knowledge of facts which were to the effect defendant's testimony was not true. Defendant's motion for new trial was supported by affidavits of hearsay statements made by said juror and an affidavit of one of the jurors. The motion for new trial was overruled. In reversing the judgment and remanding the cause, the court, reviewing, quoting and citing authorities, held that plaintiff, by failing to object, waived his right to not have the evidence given its natural probative force ([6]); and that the constitutional right of a trial by jury means the

right, unless waived, to a trial by twelve impartial qualified jurors and a verdict based on their honest deliberations upon the evidence produced in court, even though three-fourths of them may return a verdict [7], quoting Lee v. Baltimore Hotel Co., 345 Mo. 458, 463, 136 S.W.2d 695, 698, 127 A.L.R. 711, and Middleton v. Kansas City Pub. Serv. Co., 348 Mo. 107, 115, 117, 118, 152 S.W.2d 154, 158, 160.

 As considered by the trial and appellate courts in Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673, 676, 677 [8], the fact, if a fact, that a defendant is protected by insurance is not a ground for a plaintiff's recovery of damages. How the defendant is to raise the money to pay a judgment has nothing to do with the determination of his negligence or the amount of plaintiff's damages. Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538, 540.

In Ullom v. Griffith, Mo.App., 263 S.W. 876, 880, plaintiff was asked a competent question and began to cry. The court permitted counsel to interrogate the jury to see if her conduct had affected them. A juror stated, in effect, he saw no reason for putting questions to the witness that put her in tears, and thought it was the attorney's fault she was crying. He stated he could render a fair and impartial verdict. Defendant's motion for new trial was overruled, but the appellate court reversed the judgment and remanded the case for trial anew. The foreign case of Farrington v. Cheponis, 82 Conn. 258, 73 A. 139, 140, involved a somewhat similar incident.

In Cooper v. Carr, 161 Mich. 405, 126 N.W. 468, 470, one of the jurors prior to the introduction of any evidence on behalf of defendant made statements indicating he was biased against defendant, and that he was ready to give plaintiff a verdict for $2,000. The appellate court, in reversing a judgment, entered after a remittitur, and remanding the cause, stated: "It is a well-known rule that where, during the progress of a trial, and before the submission of the case, the juror has made statements outside the jury room concerning the case, or evidence offered therein, indicating a fixed opinion unfavorable to the moving party, or ill will towards him, it is ground for a new trial."

 It was not necessary to find that other jurors were influenced by juror Sinclair. Defendant was entitled to twelve impartial jurors. It is safe to say that juror Sinclair would not have been on the trial jury had he made said statement on the voir dire examination. His statement was made before any evidence had been heard. It may not have been directed against the defendants, but it indicated that as the voir dire examination had disclosed insurance was involved, he stood ready to resolve any doubts in favor of plaintiff. The prayer offered by juror Dell prior to any deliberations that plaintiff be awarded $50,000, the amount sued for, also indicates improper influences were affecting other jurors.

 The trial court, believing the verdict excessive, conditioned the denial of a new trial on a remittitur of $5,500. The remittitur was not ordered on the ground the verdict or its amount was the result of misconduct on the part of any juror. We conclude, however, that the case was not submitted to the fair and impartial jury a litigant is entitled to have consider his cause, and it should be remanded for a new trial. In addition, the damages awarded by the verdict were excessive and were likely induced by misconduct of a juror or jurors. There is no showing to the contrary. See Middleton v. Kansas City Pub. Serv. Co., supra, 152 S.W.2d 158 [2, 5]. A new trial, and not a remittitur, is necessary to cure the error. Clark v. Atchison & E. Bridge Co., 333 Mo. 721, 62 S.W.2d 1079, 1082 [12]; Mahany v. Kansas City R. Co., 286 Mo. 601, 228 S.W. 821, 827 [11]; Coleman v. Ziegler, Mo.App., 226 S.W.2d 388, 393 [12].

**36**

It is not necessary to rule other assignments. The situation may be different upon a new trial.

The judgment is reversed and the cause remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.