Arthur M. STEVENS, (Plaintiff) Respondent,

v.

Wilton WALDMAN, (Defendant) Appellant.

No. 31396.

St. Louis Court of Appeals.

Missouri.

Feb. 18, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied March 12, 1964.

634

George F. Heege, III, Heege & Heege, Clayton, for appellant.

Byron A. Roche, John T. Murphy, Jr., Murphy & Roche, St. Louis, for respondent.

ANDERSON, Judge.

This is an action by Arthur M. Stevens against Wilton Waldman, to recover damages for personal injuries alleged to have been sustained on April 16, 1959, as a result of a collision at or near the intersection of East Taylor Avenue and North Broadway in the City of St. Louis, between an automobile being driven by plaintiff and a car owned and operated by the defendant. There was a verdict and judgment for $2500.00 in favor of plaintiff. Defendant has appealed.

North Broadway runs in a general northerly and southerly direction. East Taylor Avenue is an east and west street. Traffic at the intersection of these two streets is controlled by electric signals which permit a left turn upon a proper signal. That portion of East Taylor for eastbound traffic has three lanes. Each traffic lane is about ten feet wide. Except for the left turn lane, the traffic lanes are not separated by a white line. East Taylor is paved with asphalt.

At about 7:45 A.M. on April 16, 1959, and just prior to the accident, plaintiff was operating his 1952 Dodge Automobile eastwardly on East Taylor and was approaching North Broadway intending to make a left turn north onto North Broadway. He was traveling in the left turn lane, which was immediately south of the center line of the street. As he approached the intersection there were three or four automobiles, ahead of him, facing east. In the automobile with plaintiff, at the time, was a hitch-hiker whom he had picked up some time previously, about two miles from the scene of the accident.

The hitch-hiker was a young man, whose name plaintiff did not know. He had his lunch with him and sat alongside of plaintiff

in the front seat of the car. He told plaintiff that he intended to go to Broadway and East Taylor.

Plaintiff had owned the Dodge car he was driving for about a year. The right door of the car was hinged toward the front of the car and opened out from the center post. The rear edge of this door did not fit properly; it stuck out about an inch.

Plaintiff brought his car to a stop in the left turn lane, behind three or four cars that were also stopped. There was an automobile being operated by Virginia Goss which was stopped to the right or south of plaintiff's car, and about even with it. All these cars were waiting for the traffic lights to change.

On direct examination plaintiff testified that the distance between the right side of his automobile and the left side of the Goss car was, "I'd say five or six feet." On cross-examination he stated that the distance was "I would say between five and seven feet, somewhere in there."

Defendant on the day of the accident was driving a 1950 Jaguar sports car. This car, according to defendant's testimony, is about fifteen feet long and sixty-four to sixty-four-and-one-half inches in width. The hub caps, or "knock-off hubs", as they are referred to in the evidence, on this car extended one and one-half inches beyond the side lines of the car. The axles, through the hub for the front and rear wheels, are approximately the same length, and the "knock-off hubs" are the same height off the ground. The greatest width ·of the car is at the front wrap-around bumper, which extends beyond the hub caps. The car was built lower than regular American automobiles of that time. The car from the doors tapered toward the rear.

After plaintiff had been stopped for a few seconds, defendant drove his car into the space between plaintiff's car and the car of Virginia Goss. Plaintiff felt two jars, one slightly heavier than the other. He looked around to see what had happened and saw the right door of his car crushed. The outer edge of the door was hooked onto the rear fender of defendant's car.

In a deposition introduced in evidence by plaintiff, the defendant testified that the right front door of plaintiff's car came in contact with the "knock-off hub" of the left rear·wheel of his car. He also testified that, after he heard the impact, his car was pushed toward the right and came in contact with the car on his right. This was the automobile driven by Virginia Goss. He stated there was no damage to his car from this contact. Virginia Goss testified there was damage to her car, for which she made a claim against defendant. The details with reference to this damage were not developed by the evidence. Her claim was not paid.

Plaintiff testified on cross-examination that except for the point where the right door was in contact with defendant's car, the distance separating the two cars was about eight to ten inches. When asked by defendant's counsel if the distance could have been so much as twelve to sixteen inches, plaintiff replied, "It could have been."

Plaintiff testified that five seconds before the impact the hitch-hiker was sitting in the car; that he never saw the hitch-hiker attempt to get out of the car. He further stated he did not know what the hitch-hiker was doing at the time of impact, because he was watching the traffic light across the street. A few minutes after the impact the hitch-hiker disappeared. Defendant testified he never saw the door of plaintiff's car open before the accident, nor did he see anybody get out of plaintiff's car.

Defendant testified that he was going very slowly, about five to six miles per hour, and brought his car to a stop within five or six feet after the impact. He also stated that there was a clearance of one foot between his car and plaintiff's car and the automobile of Virginia Goss, as he was passing between the two cars.

Defendant produced the police officer who had investigated the accident. The officer testified that plaintiff told him that the hitch-hiker was alighting from the car at the time of the accident.

As a result of the collision, plaintiff was thrown about in his car and according to his testimony sustained the injuries for which he brought this suit.

■ Appellant's first assignment of error is that the court erred in refusing to direct a verdict at the close of the whole case. In support of this assignment, it is urged that there was no substantial evidence to support the theory of negligence submitted. The only theory of negligence submitted to the jury was, that defendant attempted to drive his automobile in the space between plaintiff's car and the automobile of Mrs. Goss, when there was not sufficient room between said vehicles to do so without colliding with plaintiff's car. Under the authorities, we are limited to a determination as to whether the evidence is sufficient to support said assignment. We cannot examine the record to ascertain if plaintiff made a case under the other assignments of negligence pleaded. When plaintiff elected to submit his case solely upon the foregoing assignment of negligence, he abandoned all other allegations of negligence. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316; Welch v. McNeely, Mo., 269 S.W.2d 871; Kirks v. Waller, Mo., 341 S.W.2d 860. And in passing on the question now before us, we will consider the evidence in the light most favorable to plaintiff, give plaintiff the benefit of all favorable inferences arising therefrom, and disregard defendant's evidence unless it aids plaintiff's case. Kirks v. Waller, Supra.

■ With the last mentioned rule in mind, we believe that it could reasonably be found from the evidence that there was a distance of five feet or sixty inches separating plaintiff's car from the vehicle on his right which was being operated by Mrs. Goss; that the width of the body of defendant's Jaguar was sixty-four and one-half inches; that the "knock-off hubs" on said car extended one and one-half inches beyond the body of the car on each side thereof, making a total width of the car, sixty-seven and one-half inches. Under the foregoing state of facts it is clear that plaintiff made a case for the jury under the theory of negligence submitted.

■ But appellant contends that plaintiff was bound by the testimony of defendant, given in a deposition, which deposition was introduced in evidence by plaintiff. In that deposition, defendant stated that there was at least one foot clearance on either side of his automobile as he passed between plaintiff's car and the car of Mrs. Goss. But plaintiff is not bound by this testimony since it was contrary to plaintiff's own testimony. As heretofore stated, the rule is firmly established that in determining the sufficiency of the evidence to support a submission of negligence, plaintiff is entitled to the benefit of all favorable evidence and all favorable inferences therefrom. And this is true whether such evidence is introduced by plaintiff or defendant, except where evidence upon which he seeks to rely is contrary to plaintiff's own testimony, or is at war with the theory of his case. Anthony v. Morrow, Mo.App., 306 S.W.2d 581. He is only bound by testimony introduced by him where such testimony is the only evidence as to the fact in issue. In the case at bar defendant's testimony in said deposition tending to show the width of the space between plaintiff's car and that of Mrs. Goss, was not the only evidence in the case. Plaintiff testified as to the width of said space; defendant testified as to the width of his car, and from this evidence the jury could find that defendant's car could not be driven through that space without colliding with plaintiff's car. Plaintiff was not bound by the testimony of defendant from which a different inference could be drawn.

Appellant also argues that there was no direct evidence that defendant's car struck the door of plaintiff's car, and for that reason plaintiff failed to make a case for the jury. It is true that plaintiff did not actually see defendant's car strike any part of his car. However, there was evidence that plaintiff's car was stopped at or near the intersection when he felt two jars, one slightly heavier than the other, and when he looked around he saw the right door of his automobile crushed and in contact with defendant's car; that defendant's car was in the space between his car and that of Mrs. Goss; that prior thereto this space had not been occupied by any vehicle; that there was evidence from which it could reasonably be found that this space was too narrow to permit an automobile free passage; that the right door on plaintiff's car was sprung so that it extended one inch beyond the body line of said car; that there was testimony from defendant that he drove into this space between plaintiff's car and the car of Mrs. Goss; that while his car was moving into said space he heard a thud; that the rear end of his car was, at the time pushed to the right; he looked around and saw the door of plaintiff's car in contact with his car at the left rear "knock-off hub"; that the door of plaintiff's car was damaged, the outer edge twisted and the door folded from inside out, and that he did not see anybody open the door of plaintiff's car at any time.

We believe that it could reasonably be found from the foregoing evidence that defendant's car ran into the plaintiff's car door as defendant proceeded into the space between plaintiff's car and the car being operated at the time by Mrs. Goss, and that it was through defendant's negligence in the respects submitted that the collision occurred.

■ It is further argued that the only logical inference that can be drawn from the evidence is that the hitch-hiker, intending to alight from plaintiff's car, negligently opened the door causing it to come in contact with the left rear fender of defendant's car. Nobody at the trial testified to having seen the hitch-hiker open the door, and the only evidence that he did, was the testimony of the police officer, who stated that plaintiff told him at the scene of the accident that a hitch-hiker was, at the time of the accident, getting out of the car. The police officer was defendant's witness, and his testimony, at most, merely raised an issue for the jury. It did not destroy plaintiff's case established by the circumstantial evidence. There is no merit to defendant's first point.

It is next urged that the court erred in failing and refusing to declare a mistrial and discharge the jury when defendant's witness Goss, in answer to a question propounded by plaintiff's counsel, stated she had made a claim against defendant's insurance company for the damage to her automobile.

During the cross-examination of Virginia Goss, who was a witness for defendant, plaintiff's counsel inquired of the witness if she had made a claim against anyone for the damage to her car. Defendant's counsel interposed an objection to this question, which objection was, by the court, sustained. Thereafter, there was a discussion about this matter between the court and counsel outside of the presence of the jury. In this discussion plaintiff's counsel stated, that if a claim was made and paid it would tend to show the interest of a witness and affect her credibility. Counsel for defendant stated that the witness had made a claim but was not paid. The following then appears:

"The Court: We are going on dangerous ground here; if she says against an insurance company, you are done.

"Mr. Roche: I am not done. If she says 'yes', my next question will be 'did you make one against Mr. Waldman', and if she volunteers an answer that's not called for I don't think I am—

\*　　\*　　\*　　\*　　\*　　\*

"The Court: Tell her to answer yes or no whether she made a claim, and then the other. Is that all right?

\* \* \* \* \* \*

"Q. (by Mr. Roche): The question, Miss Goss, I think it can be answered with a yes or no, if you don't mind, if you can, did you make a claim against Mr. Waldman for the damage to your vehicle?

"A. By a claim—I mean, just, do you mean I reported it to his insurance company?

"Q. Did you make a claim against him for the damage to your car?

"Mr. Heege: If the Court please. I think at this time I am going to be forced to ask for a mistrial and discharge of the jury.

"The Court: Denied.

"(to the witness) The question can be answered yes or no. You were advised that at the beginning of the question.

"A. I don't quite understand \* \* \*.

"The Court: Well, it's very simple.

"A. —the mention of a claim. I did report it to his insurance company.

"The Court: You don't want to listen to me either, is that what you are saying?

"A. I'm sorry.

"Mr. Heege: Same motion; same grounds.

\* \* \* \* \* \*

"A. Well, I guess I'd have to almost say yes.

"Q. (By Mr. Roche) You were paid for that claim?

"A. No.

"Q. And do you have any negotiations or understanding to be paid after this lawsuit is over with?

"A. No."

It will be observed that the reference to defendant's insurance company was not a responsive answer to the question asked. The question was proper. Plaintiff had a right to know if Mrs. Goss had made a claim against defendant for the damage to her car, and if so, whether it had been paid. Counsel took the precaution, as suggested by the Court, to advise the witness that the question could be answered yes or no. Yet, in spite of the carefully worded question, Mrs. Goss, who was defendant's witness, over whom plaintiff had no control, did not answer the question. Instead she responded by asking plaintiff's counsel a question; she said "do you mean I reported it to his insurance company?" There is nothing in the record to indicate that counsel for plaintiff intended to elicit this response to his question. No objection was made immediately after the objectionable matter was uttered, nor was there any request made of the court to strike or instruct the jury to disregard it. Instead counsel for defendant asked for most drastic remedy a mistrial and discharge of the jury. Whether such a sanction should be applied in a situation such as here presented rests within the sound discretion of the court. Plannett v. McFall, Mo.App., 284 S.W. 850; Jones v. Missouri Freight Transit Corp., 225 Mo.App. 1076, 40 S.W.2d 465; Carter v. Rock Island Bus Lines, 345 Mo. 1170, 139 S.W.2d 458. And unless there has been a clear abuse of such discretionary power, it is not within the province of an appellate court to interfere. Plannett v. McFall, supra. We do not find an abuse of discretion, and for that reason must rule this point against appellant.

Appellant complains of Instruction Number 1 given at plaintiff's request. It is contended that the Instruction permitted the jury to find for plaintiff on a theory of negligence not pleaded.

The negligence pleaded was (a) negligent rate of speed; (b) failure to keep a proper and adequate lookout ahead and laterally; (c) that defendant then and there negligently and carelessly caused, allowed

and permitted his said automobile to strike and violently collide with the stopped automobile; (d) that defendant negligently and carelessly failed and omitted to stop his said automobile or swerve the same and thus have avoided the collision; (e) that defendant negligently failed to keep his automobile under control so that it could be readily stopped on the first appearance of danger; (f) negligence under the so-called humanitarian doctrine.

Instruction Number 1 submitted as a ground of negligence that defendant attempted to drive his automobile between plaintiff's car and the vehicle stopped on plaintiff's right when there was not sufficient space for defendant to pass.

■ It appears from the transcript that defendant's counsel made no objection to the evidence tending to show the negligence submitted as being outside the scope of the pleadings. In fact, defendant joined issue by introducing evidence which, if believed, tended to show that the space he drove into was sufficient to permit the passage of automobiles. Under such circumstances the issue submitted should be treated in all respects as if it had been raised by the pleadings. Civil Rule 55.54 V.A.M.R. Dawley v. Hoy, Mo., 341 S.W.2d 111, 115.

There are several other complaints made against this instruction which we will not consider for the reason that the objections to said instruction in the motion for new trial were not sufficient to preserve for review the complaints now being made in this court. Civil Rule 79.03 V.A.M.R. provides, among other things, that "[i]f any specific objections to instruction have not been made at the trial before submission to the jury, then such specific allegations of error in instructions must be set forth in the motion for new trial to preserve the error for review."

■ Only general objections were made when the instruction was given. Defendant's complaint of Instruction Number 1 in his motion for new trial was "that said instruction is vague, indefinite and confusing and that it gives the jury a roving commission, and for the further reason that said instruction is outside the scope of the plaintiff's pleadings and is therefore erroneous." Except for the complaint that the instruction went beyond the scope of the pleadings, a point we have ruled, the objections were insufficient to preserve anything for review. To be proper, an objection should be specific, in the sense that it points out with a reasonable degree of definiteness, what is actually claimed to be wrong with the instruction in language which will inform the court of the point urged and sought to be preserved and presented to the appellate court. The objections made, with the exception noted, do not do this and are, therefore, insufficient under Civil Rule 79.03 V.A.M.R. Ayres v. Keith, Mo., 355 S.W.2d 914; Adair v. Cloud, Mo., 354 S.W.2d 866.

The court gave at defendant's request Instruction No. 6, which was a sole cause instruction, by which the jury was instructed that they should find for defendant, if they found that the sole cause of the collision was the sudden opening of the right front door, by plaintiff's passenger, into the path of defendant's car and in such close proximity thereto as to make it impossible for defendant to prevent his automobile from striking plaintiff's automobile. By plaintiff's Instruction No. 7 the jury was instructed that if the negligence of defendant, if any, and the negligence, if any, of the passenger concurred in causing plaintiff's injury, the verdict should be for the plaintiff.

■ Appellant complains that the giving of Instruction No. 7 was error for the reason that it conflicts with plaintiff's verdict-directing instruction and plaintiff's theory of the case. No such specific objection was made at the trial, or in defendant's Motion for New Trial. For that reason, under Civil Rule 79.01 V.A.M.R. and Civil

Rule 79.03 V.A.M.R., the error complained of is not properly before us.

The judgment of the trial court is affirmed.

RUDDY, P. J., and WOLFE, J., concur.