Alma BOLAND, Plaintiff-Appellant,

v.

Ferenc JANDO, Defendant-Respondent.

No. 52364.

Supreme Court of Missouri,
Division No. 1.

May 8, 1967.

Murphy & Kortenhof, Edward E. Murphy, Jr., St. Louis, for respondent.

HENRY J. WESTHUES, Special Commissioner.

This suit was filed by Alma Boland against Ferenc Jando to recover damages in the sum of $22,500 for loss of consortium alleged to have resulted from personal injuries to her husband. The husband, John A. Boland, filed a suit to recover damages alleged to have been sustained as a result of a collision of Jando's car with Boland's car. That case resulted in a jury verdict and judgment in Boland's favor in the sum of $500 for personal injuries and $200 for property damage. John A. Boland had asked for $35,000. Boland appealed to this Court on the theory that the verdict was grossly inadequate. The judgment in that case was affirmed. See Boland v. Jando, Mo., 395 S.W.2d 206. In the case now before us, there was a jury verdict and judgment in favor of the defendant. A motion for new trial was overruled and plaintiff appealed.

The questions submitted to the jury were as follows:

First, was John A. Boland, plaintiff's husband, injured as a result of the negligence of defendant Jando?

Second, were the injuries of Boland such as to justify a verdict for plaintiff on the theory of loss of consortium?

Third, was Boland guilty of contributory negligence so as to defeat plaintiff's claim?

We find that the evidence in the record was sufficient to submit each of the above questions of fact to a jury for determination. The verdict for the defendant may have been determined on the ground that Boland was guilty of negligence contributing to his injuries, or that Boland's injuries were of such a nature that plaintiff was not damaged thereby. The evidence as to Jando's negligence, Boland's injuries, and contributory negligence on

Sherman Landau, St. Louis, for appellant.

the part of Boland was substantially the same as it was in the case of Boland v. Jando supra, 395 S.W.2d 206. For a full statement of the evidence, we refer the reader to the opinion in that case.

A brief statement with reference to the collision involved in this lawsuit will be sufficient. Plaintiff's evidence was that on March 12, 1964, John A. Boland was driving his car south on Grand Avenue in St. Louis, Missouri. When he stopped at a stop sign at Lierman Avenue, his car was struck at the rear by a car operated by Jando. Defendant Jando introduced evidence that Boland suddenly and without warning slowed his car to a stop and that Jando was unable to stop in time to avert a collision; that at the time of the collision, Jando's car was traveling at a speed of not more than six or seven miles per hour.

We shall relate other evidence in the course of this opinion when considering the points relied on for a reversal of the judgment. The points are seven in number. We shall dispose of them in the order the alleged error occurred in the course of the trial.

■ A point is made that the trial court erred in denying plaintiff's counsel the right to inquire of the jurors on voir dire whether any of them was employed by or was a stockholder in any insurance company or had any connection with or was an agent for a casualty insurance company. The record shows that plaintiff's counsel submitted to the court a list of questions he desired to ask of the jurors. Defendant's counsel objected and stated that "I think the only question Mr. Landau should be permitted to ask this jury is whether or not anyone of the jurors or any member of their immediate family works for or has a financial interest in the Hartford Accident and Indemnity Company."

The list of questions submitted was as follows:

" '1. Are any of you employed by, or stockholders in, an insurance company which is engaged in the casualty insurance business?

'2. Are any of you engaged in the general insurance agency business or are any of you an agent for a casualty insurance company?

'3. Have any of you ever worked as a claims investigator or insurance adjuster?

'4. Have any of you read any articles or advertising in periodical publications which tend to indicate a relationship between the amounts of personal verdicts and increases in insurance premiums?

'5. (If any of the jurors answer the next preceding question in the affirmative.)

Notwithstanding any opinion which you might have formed regarding the subject of the advertising or articles just mentioned, would you be able to decide the question of liability and damages in this case solely on the evidence and the law without being influenced by such an opinion?' "

The trial court made the following ruling:

"THE COURT: I will permit the asking of the question that has been stated in the record as to whether or not anyone on this panel works for or has financial interest in the Hartford Insurance Company. I will permit you to ask Question No. 3 which is set out as follows:

" 'Have any of you ever worked as a claims investigator or an insurance adjuster?'

"I think you are entitled to know that. However, since our courts have been, I would say, strict on this matter, I don't want you to ask this question right after you ask the one about the Hartford Accident Insurance Company.

"MR. LANDAU: I don't intend to ask one about the Hartford Accident.

"THE COURT: I will permit you to ask No. 3, as I have indicated, because I think it does make a difference if a man

has worked as a claims investigator for anybody, insurance company, railroad company or anybody else."

It may be noted that Mr. Landau, in effect, proposed to the trial court that he wished to ask all of the questions submitted and if the court did not agree, then no questions would be asked with reference to the subject of insurance.

■ We are of the opinion that the trial court did not unduly restrict the questioning. The court offered counsel the opportunity to ask certain questions and counsel did not accept the offer. The scope of such inquiry rests to some extent within the discretion of the trial court. Eickmann v. St. Louis Public Service Co., Mo., 323 S.W.2d 802, l.c. 807(7–10); Carter v. Rock Island Bus Lines, 345 Mo. 1170, 139 S.W.2d 458, l.c. 462 (2–6); Faught v. St. Louis-San Francisco Ry. Co., Mo., 325 S.W.2d 776, l.c. 779 (1, 2); 50 C.J.S. Juries § 275(2), p. 1046. Plaintiff cited no Missouri case to support his contention. He did cite a number of federal cases. The ruling of the trial court was within the rule followed in this State as evidenced by the authorities cited supra.

■ Plaintiff offered to introduce in evidence a repair bill which had been paid for the repair of the car involved in the collision. Defendant objected on a number of grounds. The trial court sustained the objection and stated, "I am going to exclude any testimony on this unless you have a mechanic come in who can descibe the extent of damage to the car. That would show the amount of violence. This bill doesn't go to prove or disprove any amount of violence, in the Court's opinion."

The ruling of the trial court was correct. The amount of the repair bill would not have been any evidence of the violence of the collision.

■ The trial court permitted defendant, over plaintiff's objection, to introduce certain exhibits, the same being photographs of defendant's car. It was admitted that they were taken after certain repairs had been made. Plaintiff says the exhibits should not have been admitted because they did not reflect the condition of the car before the repairs were made. The only purpose of the evidence was to show that the damage to the car had been slight. On direct, as well as on cross-examination, Jando explained the damage in detail using the exhibits in doing so. The evidence of Jando in connection with the photographs fully described the damages to the car. It seems to us the use of the exhibits aided the jury in determining the extent of the damage. Plaintiff cited the case of Gignoux v. St. Louis Public Service Co., Mo. App., 180 S.W.2d 784, l.c. 786(2, 3). In that case, the plaintiff was injured when she alighted from a street car. The negligence relied on was that plaintiff was required to alight at an unsafe place causing her to fall. A photograph of the alleged unsafe place, taken after repairs had been made, was admitted in evidence. This was held to be error. The St. Louis Court of Appeals stated the reason for holding that the admission was error as follows: "This testimony did not put before the jury facts from which they could gain an intelligent idea of the conditions at the time of the accident, but did get before the jury evidence of subsequent change in condition, which might have been regarded by them as an admission by the defendant of its negligence." 180 S.W.2d 786(5). See also 32 C.J.S. Evidence § 709, p. 986. It is obvious that the Gignoux case is not in point.

■ Error was assigned to the giving of instruction No. 4 covering the alleged contributory negligence of Boland. The particular complaint is that defendant, in the answer, alleged John A. Boland had made a "sudden and abrupt stop" but the instruction submitted the question as "John Boland suddenly slowed his automobile." Plaintiff says that the negligence submitted was not the negligence pleaded. Plaintiff relies on Banta v. Union Pacific R. Co., 362 Mo. 421, 242 S.W.2d 34, l.c. 42(10–12).

It may be noted that in the Banta case the negligence pleaded was that the defendant railroad had permitted a steam line of an engine or tender to become defective resulting in the escape of steam which froze on a ladder making it unsafe. The instruction submitting the case to a jury omitted the element of a defective steam line and authorized a verdict for plaintiff if the jury found that the ladder was coated with ice. This Court held the instruction omitted an essential element of recovery. The instruction in the case now before us did not omit any essential element. If Mr. Boland suddenly slowed his car without a warning, a jury could find that he was guilty of negligence. So, also, could a jury find negligence if a sudden stop were made without warning. It may be said that a sudden stop is usually preceded by a sudden slowing. We are of the opinion that the instruction was not misleading and that plaintiff's rights were not prejudiced. Vinson v. East Texas Motor Freight Lines, 280 S.W.2d 124, l.c. 132(7); Stepp v. Rainwater, Mo. App., 373 S.W.2d 162, l.c. 166(6).

▇ It is claimed that the trial court erred in overruling plaintiff's objection to portions of the argument of defendant's counsel to the jury. The record does not disclose any objection to defendant's argument. In fact, plaintiff's counsel in his argument so stated. Note what he said:

"MR. LANDAU: I didn't interrupt Mr. Kortenhof at any time during his argument to the jury, Your Honor."

This comment was made when Mr. Kortenhof objected to a portion of Mr. Landau's argument. Plaintiff's counsel having failed to make any objection, there was no ruling of the trial court for us to review.

▇ In another assignment of error, plaintiff says the trial court erred in sustaining defendant's objection to the argument of plaintiff's counsel. The argument objected to was as follows:

"MR. LANDAU: * * * I have a few further thoughts. Mr. Kortenhof has complained about the fact that they have had to come into court to fight a claim that is not their fault. This claim should have been settled; this claim should never have been presented in court. It should have been settled a long time ago."

At this point, an objection was made which the court sustained. Plaintiff says, in the Points and Authorities of the brief, that the above argument was "in reply to defendant's rhetorical question, 'How many lawsuits are going to be filed? There won't be enough courtrooms in this courthouse or enough juries to take care of it if that goes on.'" Plaintiff did not object to defendant's "rhetorical question" made during the argument.

The record shows that plaintiff's counsel did in fact answer the argument of defendant. Plaintiff's argument answering defendant on this subject covered a number of pages and he fully explained that plaintiff had a separate cause of action from that of the husband. The trial court properly sustained the objection to the argument that the claim should have been settled. Nichols v. Blake, 395 S.W.2d 136, l.c. 142 (10, 11); Starnes v. St. Joseph Railway Light, Heat & Power Co., 331 Mo. 44, 52 S.W.2d 852, l.c. 854, 855(5).

▇ The last assignment of error to be considered is plaintiff's claim that the trial court erred in sustaining an objection to plaintiff's reference, during the argument, to the hospital record upon the ground that the entire record had not been read in evidence. Counsel says the court directed him not to read the entire record, specifically admonishing counsel to omit portions thereof. The record does not support this contention. At the time Mr. Landau offered to read the hospital record to the jury, the following occurred:

"MR. LANDAU: Your Honor, we ask leave to read into evidence the hospital record of Barnes Hospital.

"MR. KORTENHOF: No objection.

"(Said hospital record was marked for identification by the reporter as Plaintiff's Exhibit 11.)

"MR. KORTENHOF: Would it save time to read it from the transcript?

"MR. LANDAU: I think we can move along just as well by selecting portions that are significant, if the Court please."

Mr. Landau then read from the hospital record which covered five pages of the transcript, at which point the following occurred:

"MR. KORTENHOF: This was read already; it will be the same thing; just repetition.

"MR. LANDAU: This is the encephalographic report.

"MR. KORTENHOF: We have already heard about the shock from the transformer about four or five times.

"THE COURT: Let's proceed, gentlemen. There is bound to be some duplication. Try to omit some of it.

"MR. LANDAU: There is some duplication apparently. They put it in one place and repeat it in another."

The only admonition made by the court pertained to the matter of duplication. We find no ruling which prevented Mr. Landau from reading all of the hospital report. If any material portion was omitted, it was voluntary on the part of Mr. Landau.

There was evidence showing that four doctors had treated John A. Boland for his alleged injuries. Not one was called as a witness. Defendant's counsel called this fact to the attention of the jury and asked why they were not called. In reply, plaintiff's counsel stated during the closing argument, "There are two reasons and both of them good ones." Plaintiff's counsel then stated, "Their (doctors) findings are contained in this hospital record we brought in." This was objected to by the defendant. The court then ruled as follows:

"Just a minute. The objection will be sustained because all of the hospital record has not been read. If there was any other part in there by these doctors, Mr. Landau, you would not be permitted to read it. They would have to come in. You know that. So I will sustain the objection." Plaintiff's counsel then attempted to note how much it would cost to get the doctors to testify. Objection by defendant was sustained by the court and plaintiff's counsel's statement was ordered stricken from the record.

This Court, in the case of Richardson v. Wendel, 401 S.W.2d 455, l.c. 459, 460(10), ruled on a similar situation. It was there ruled that even though a hospital record was in evidence, the defendant's counsel had the right to call to the attention of the jury the fact that doctors who treated plaintiff had not been called.

The record shows that Mr. Landau explained to the jury the extent of Mr. Boland's injuries as shown by the hospital records. At one point, when defendant objected, the court ruled as follows:

"THE COURT: Ladies and Gentlemen, you have to be guided by what you recall as to what the hospital record says; not what these lawyers say. You understand that, I am sure."

On another occasion, defendant objected to Mr. Landau's reading from the hospital record and the court overruled the objection. We find no error in the court's ruling on the subject of the hospital records.

■ The ruling of the trial court in not permitting counsel to inform the jury about the expense of having doctors present to testify was not prejudicial to plaintiff. Mr. Landau stated to the jury, "Now, just think of what Boland would have to pay out if he had to pay $175 to bring—" At this point, objection was made by the defendant and the trial court sustained the objection. Defendant in this case called a doctor as an expert witness. The doctor was asked what he charged for his time as a witness and he

answered that the charge was $175. It would not necessarily follow that any of plaintiff's doctors would have charged $175 to testify on his behalf. The court was justified in sustaining the objection.

No prejudicial error having been found, the judgment of the trial court is hereby affirmed.

PER CURIAM:

The foregoing opinion by WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.